FOREGGER, Respondent, v. FOREGGER, Appellant.*

*No. 36. Argued October 29, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 553, 164 N. W. 2d 226.)

* Motion for rehearing denied, without costs, on February 4, 1969.

634

636

638

For the appellant there was a brief by *Ruppa & Wegner,* attorneys, and *Norman W. Wegner* of counsel, all of Milwaukee, and oral argument by *Nathan Ruppa.*

For the respondent there was a brief by *Ray T. McCann,* attorney, and *Leonard L. Loeb* of counsel, both of Milwaukee, and oral argument by *Mr. Loeb.*

WILKIE, J. Three issues are presented on this appeal:

(1) Did the trial court err in entering duplicitous orders and in retroactively increasing support payments for 1966 and 1967?

(2) Did the trial court err in the manner in which it enforced its initial judgment concerning the sale of real estate?

(3) Did the trial court abuse its discretion in ordering the defendant's share of the proceeds of the sale of real estate to be held in trust as a penalty for contempt in failing to keep a $100,000 life insurance policy in force as required by the judgment of divorce?

Appellant objects to that portion of the order of the trial court which provided that the support payment arrearage was $5,125. This figure was computed as follows:

Arrearage shown on alimony card as of
  12/67 .......................... $6,232.00
Retroactive increase for 1966–1967...... 2,000.00

                                      $8,232.00
Less
Equitable credits—duplication of food
  costs ............................ $3,107.00

Total arrearage ..................... $5,125.00

*Equitable Credits.*

Appellant is responsible for the educational and medical expenses incurred by his children. Thus, he contends that for the period of time when the children were away at school or in the hospital it was improper for him to be charged with support payments. It is his contention, that when paying for the children's expenses away from home he is, in effect, paying double if he is also required to make support payments to the wife.

From the time the trial court made its initial order requiring appellant to pay for educational expenses, the trial court recognized the possibility of a duplication in the various orders. However, the court deferred any final determination on this matter until after it received the recommendations of the court commissioner.

The proper method for revising or modifying a judgment in a divorce case is set forth in sec. 247.25, Stats., which provides:

> **"Revision of judgment.** The court may from time to time afterwards, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment concerning the care, custody, maintenance and education of any of the children, and make a new judgment concerning the same as the circumstances of the parents and the benefit of the children shall require."

The appellant never petitioned the trial court pursuant to the above statute to have the support payments reduced on the ground of duplication. Rather, appellant unilaterally reduced his support payments and the matter came before the court only when the defendant was brought in for possible contempt of the court's 1964 divorce judgment; in these proceedings appellant claimed that he was entitled to certain equitable offsets against the alleged arrearage in support payments due to the

fact that educational, medical, and support orders required him to pay double for room and board expenses. The court ruled that even though there had been no petition to the court under sec. 247.25, Stats., it was proper for the court to consider equitable offsets in the contempt proceeding. The court stated:

"I think there may be some support toward the idea that a legal change in the support order should be made or the arrearage at least as far as the clerk is concerned must run. However, I think when the matter comes before the court on the contempt hearing you have a right to consider the matter of equitable offsets and the fact of a child being away to school at a time when court-ordered payments for support of the child were almost transparently based on the expectation the child would largely or most of the time be at home, I think is not improper."

Also, in its order of June 6, 1967, the court stated:

". . . there has been no motion on behalf of the defendant to reduce the support payment however there is an assertion of offsets construed as equitable in nature against this arrearage in support payments which is contested on behalf of the plaintiff, and this referred to offset, if any, is referred to the family court commissioner for determination and recommendation as to offset on the arrearage and what amount child support should be set in the future as to the children based upon present circumstances; said family court commissioner shall make its recommendations to the court promptly so that a final determination in this respect may be had, at the hearing hereinafter scheduled by this court."

In late 1967, Court Commissioner Moskowitz determined that the only item of duplication was the cost of food which he computed at $52 per month per child. He found that items such as shelter, pocket money, laundry, clothing, telephone, continued regardless of whether the

children were at home or away. At the hearing before Judge HANSEN, Court Commissioner Moskowitz testified:

". . . when the child leaves the home, the clothing, the laundry, utilities, children's recreational expenses, and the shelter, including taxes, insurance, mortgage, contingency for maintenance and repairs, those all continue, so the child being away from home the only relief the mother has is the relief of supplying the food, . . . ."

The food credits computed for the period that the children were away from the home totaled $3,107. The court adopted this finding.

In *Chandler v. Chandler* [2] this court set out two tests for reviewing a trial court's modification of a divorce judgment. Where the modification rests entirely on a factual determination, the test is whether the determination is contrary to the great weight of the evidence. However, where the modification rests primarily on an exercise of discretion, the test is whether there was an abuse of discretion by the trial court.

On this issue the court is dealing entirely with a factual determination. The trial court adopted the finding of the court commissioner that only food costs at $52 per month per child were duplicated. The appellant does not appear to dispute the particular findings of the commissioner, but simply argues that the appellant should make no support payments for the period of time when the children were away from home. Such an argument cannot prevail. There is no showing that the findings adopted by the trial court are against the great weight of the evidence.

### Retroactive Support Increase.

When the matter of appellant's claim for equitable offsets came before the court commissioner, the respondent

[2] (1964), 25 Wis. 2d 587, 131 N. W. 2d 336.

argued that if the support question was open for one purpose it was open for all purposes. Thus respondent contended that the court commissioner should look to the actual costs involved in supporting the children for the period covering the arrearage and if costs exceeded $500 per month, the support payments should be raised retroactively.

The court commissioner recommended that support payments be increased $2,000 for both 1966 and 1967. The trial court reduced the increase to $1,000 per year.

But did the trial court (and the court commissioner) have authority to enter such a retroactive support order?

There is no question but that plaintiff did not petition the court to revise and modify the support judgment under sec. 247.25, Stats. That statute provides:

"**Revision of judgment.** The court may from time to time afterwards, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment concerning the care, custody, maintenance and education of any of the children, and make a new judgment concerning the same as the circumstances of the parents and the benefit of the children shall require."

The whole tenor of the statute seems to envision prospective relief. Thus, when a change of circumstances arises which requires a change in support payments, the statute requires the party seeking the change to petition the court for relief.

*Holschbach v. Holschbach* [3] lends support to the view that sec. 247.25, Stats., grants only prospective power to the trial court. In that case a legal separation was pronounced on August 5, 1963. However, the court indicated that a number of matters including alimony and support money were to be determined at a later time.

---

[3] (1966), 30 Wis. 2d 366, 141 N. W. 2d 214.

These determinations were made on June 29, 1964, at which time the defendant was ordered to pay $74 per week support money, $1 per week alimony, and $500 in attorney fees. On appeal, however, counsel for defendant called this court's attention to the fact that between the oral pronouncement of legal separation on August 5, 1963, and the entry of judgment on June 29, 1964, the trial court had determined that the parties were to be governed by an order of the family court commissioner dated December 20, 1962. This order required defendant to pay $50 per week support money and did not require temporary alimony. Thus this court concluded that because the judgment of June 29, 1964, was entered as of August 5, 1963, "it retroactively increased the payments he had been required to make." [4] The court concluded that the judgment should be modified to eliminate that retroactive effect.

In *Chandler v. Chandler*,[5] where the court was dealing with a prospective modification requiring the defendant to pay an additional $20 per month for a child to attend summer camp, this court noted, in response to the defendant's argument that the child might not even go to camp, that "the circuit court would have the power to grant retroactive relief by reducing future support payments until the amount of any overpayments on defendant's part had been recouped." [6]

Thus, we conclude that the trial court had no authority to make its order directing the retroactive increase of the support payments and we do not reach the question of whether the trial court erred in setting the amount of that order ($1,000 for each year, 1966 and 1967).

---

[4] *Id.* at page 371.

[5] *Supra,* footnote 2.

[6] *Id.* at page 593.

*Sale of the Real Estate.*

The judgment of divorce dated June 15, 1964, provided in part:

"(h) The homestead of the parties . . . is awarded to the plaintiff and defendant as tenants in common, forty percent to the plaintiff and sixty percent interest to the defendant, subject to the following conditions:

"(1) The property is ordered sold within two years from today (May 28, 1964) without any requirement for court approval as to the terms and conditions of said sale and without precluding the parties arranging that one or the other should buy out each other's interest; the plaintiff is to occupy the premises rent free until the real estate is sold or otherwise disposed of pursuant to this judgment.

"(2) The defendant husband shall pay the real estate taxes and insurance on the property and shall pay major repairs other than incidental repairs necessary for the maintenance of the property.

"(3) In the event that the parties cannot agree on the terms and conditions of sale, either party may apply to this court for an order setting an upset price, broker to handle the sale or terms and conditions of sale of the property.

"(4) The net proceeds of the sale shall be divided forty percent to the plaintiff sixty percent to the defendant."

The record reveals that prior to May 28, 1966 (court-ordered-sale date), difficulties developed between the parties with regard to the sale of the house. On March 8, 1966, defendant's attorney wrote a letter to plaintiff concerning a possible purchaser. Plaintiff never responded. On May 19, 1966, just prior to the expiration of the two-year period, defendant brought an order to show cause why plaintiff should not be compelled to enter into a listing contract. Various other motions and counter-motions ensued, all culminating in a hearing before Judge HANSEN on July 11, 1966. At that time the parties stipu-

lated that the matter be referred to the family court commissioner. There was a hearing before the commissioner on August 26, 1966, at which time the parties were ordered to submit briefs. Before briefs were submitted, the matter again came on for hearing before Judge HANSEN on September 26, 1966. At that time defendant argued that the judgment was unequivocal and that the court should immediately rule on the matter. However, the court noted that the parties had stipulated that the matter be referred to the family court commissioner and that the matter would be ruled on only after recommendations of the assistant family court commissioner were received.

The recommendations were not received until February of 1967. On February 13, 1967, the court ruled, as to this issue:

(1) The plaintiff was given the option to purchase the property at the upset price of $54,000.

(2) If the plaintiff deposited 60 percent of the sale price with the court, the defendant was to execute a warranty deed to the clerk of court.

(3) The defendant was to pay the taxes, insurance, and repairs until the sale was completed.

Thereafter, on March 10, 1967, plaintiff attempted to exercise her option by depositing $34,000 in marketable securities with the clerk of court. However, defendant demanded cash and refused to tender the deed.

This conflict was resolved in an order by the trial court dated June 6, 1967, which provided that defendant was to deliver a warranty deed to the plaintiff and within thirty days after that delivery plaintiff was to pay $32,400 in cash to the clerk of court.

On May 18, 1967, plaintiff's attorney had served a demand for execution of the deed upon defendant. On June 30, 1967, the defendant tendered a deed to clerk of court upon the condition that it be held pending this appeal.

The deed was in the form as demanded by plaintiff except for the added clause in which defendant attempted to preserve his rights not to pay taxes and insurance on the property for the period after May 28, 1966, and the right to interest on his share of the property from that date.

Defendant-appellant contends that the order of June 15, 1964, was an unequivocal order to the effect that the property was to be sold within two years from May 28, 1964, and that, therefore, he is entitled to interest on his 60 percent share from May 28, 1966, and should not have been required to pay taxes and insurance on the property after that date. He fails, however, to discuss the significance of that portion of the June 15th order which provides that "In the event that the parties cannot agree on the terms and conditions of sale, either party may apply to this court for an order setting an upset price, broker to handle the sale or terms and conditions of sale of the property." The record clearly indicates that the parties were not able to sell the property on their own within the two-year period so made application to the court. The whole matter was referred to the family court commissioner on stipulation and thus began the slow process of resolution. There is no question but what the procedure followed was in conformity with the judgment.

In its February 13, 1967, findings, the court provided that the:

". . . order for the payment of insurance, taxes, and maintenance be extended and not be terminated as of May 1966, this being the intent of the court to place upon the defendant the continuing responsibility for the payment of insurance, taxes, and maintenance costs up to the time of the sale. This was the intent of the court at the time of judgment and the expectation of sale within two years however disappointing to either party or both not having been realized does not change as this court sees it, the equities of the situation. In fact, it was the presence of this continuing order that was in part a

reason for the court acting to reduce the alimony upon the wife's securing gainful employment and an act which resulted only in disagreement by the wife and her attorney, but appeal without final ruling due to a divided court to the Wisconsin Supreme Court."

The continuation of the order requiring defendant to pay taxes, insurance, and maintenance costs did not in any way amend or change the judgment of June 15, 1964. Therefore, the cases cited by appellant are not in point.

### Trust of Husband's Share of Residence Proceeds.

In the judgment of June 15, 1964, the trial court ordered that defendant keep in full force and effect three life insurance policies (on his own life) in the face amounts of $10,000, $15,000, and $100,000. In 1965, the defendant permitted the $100,000 policy to lapse. At the February 13, 1967, hearing the trial court found the defendant in contempt of court for failing to keep this policy in force.

At the later hearing before Judge HANSEN on December 26, 1967, the matter was finally determined. The court order of December 29, 1967, provided that the penalty for defendant's "willful and contumacious" contempt of court in allowing the $100,000 life insurance policy to lapse was that the proceeds of the sale of the real estate by the defendant to the plaintiff should be retained by the clerk of circuit court and invested and remain as a "trust or reserve fund" for the protection of the children in the event of the death of the father. It provided that the funds should be retained until either: (1) the $100,000 policy was reinstated; (2) substitute insurance of equal value was obtained; or (3) the death of the father, at which time the funds would be paid to a trustee for the then minor children.

The trial court has the power to order a father to continue in force life insurance policies for the benefit of

his children.[7] However, appellant argues that it was an abuse of discretion to order the proceeds of the home to be held in trust by the clerk of circuit court. Appellant argues that the children were not prejudiced because sufficient insurance remained in force to provide for their support until the youngest reached the age of twenty-one. Appellant contends that his total support obligation from the date of the December 26, 1967, hearing until the youngest reached age twenty-one would be $23,500, and thus the present insurance of $25,000 is adequate. However, appellant overlooks the potential educational and medical expenses for which he may be liable. These expenses could amount to well over the $25,000 provided in the remaining policies. The trial court did not abuse its discretion in entering this portion of the order.

*By the Court.*—Order modified to reduce arrearage of the defendant in his payments for child support by eliminating $1,000 for 1966 and $1,000 for 1967; as modified, affirmed. One-half costs to appellant.

ROBERT W. HANSEN, J., took no part.

The following memorandum was filed February 4, 1969.

PER CURIAM (*on motion for rehearing*). On rehearing respondent-wife argues that if the court considered equitable offsets for the appellant-husband in the contempt proceedings, it was also proper for the trial court in those proceedings to consider equitable debits in the form of increased support provisions.

The matter of contempt goes to the narrow question of appellant's compliance with the provisions of the divorce judgment. The trial court properly ruled that in deter-

---

[7] *See Morris v. Morris* (1961), 13 Wis. 2d 92, 108 N. W. 2d 124; *Trowbridge v. Trowbridge* (1962), 16 Wis. 2d 176, 114 N. W. 2d 129.

649

mining this question it could consider whether the judgment was duplicitous and, if it was, that appellant would be credited with equitable offsets for such amounts.

The question of whether there had been a change of circumstances from the wife's standpoint which would justify a support increase does not relate to the question of whether the appellant complied with the support provisions of the divorce judgment and, therefore, is beyond the scope of the contempt proceeding. Such a matter must be raised in a petition to the trial court as provided in sec. 247.25, Stats. This the respondent did not do. Even if she had, the trial court would have been without jurisdiction under sec. 247.25, to order a retroactive increase in the support provision of the judgment.

The motion for rehearing is denied without costs.