IN RE the MARRIAGE OF: James L. STRAWSER,
Petitioner-Appellant,

v.

Mary L. STRAWSER, Respondent.

Court of Appeals

*No. 85–0737. Submitted on briefs September 4, 1985.—
Decided October 11, 1985.*
(Also reported in —— N.W.2d ——.)

For the petitioner-appellant the cause was submitted on the briefs of *Techmeier, Sheedy & Associates,* with *Michael T. Sheedy* of counsel, of Milwaukee.

For the respondent the cause was submitted on the briefs of *George E. Rice,* Milwaukee county corporation counsel, with *Sandra K. Grady,* assistant corporation counsel, of counsel, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J.   James L. Strawser (James) appeals from an order denying his motion to partially recoup child support payments and directing him to pay temporary maintenance to Mary Strawser (Mary) *nunc pro tunc* as of November 1, 1981. James argues that the trial court (1) did not have jurisdiction to enter a *nunc pro tunc* order, (2) misused its discretion in approving a retroactive maintenance assessment whose sole pur-

pose was to offset James' recoupment claim, and (3) erred as a matter of law in holding that the statutory presumption of paternity precluded recoupment of child support payments.

Because a *nunc pro tunc* order is only valid for the purpose of correcting the judicial record, not altering it, the trial court erred as a matter of law in retroactively creating a maintenance obligation. We therefore reverse that part of the trial court's order. Because James successfully rebutted the presumption of paternity, the trial court erred in rejecting his motion for recoupment of support payments without stating any equitable grounds for its action. Thus, we also reverse that part of the order and remand for further proceedings.

In July, 1981, James petitioned for divorce from Mary after twenty-four years of marriage. In his petition, James named three minor children born during the marriage: John, then age fourteen, and twins James and Mark, then age six. James' petition for relief, *inter alia*, requested "a determination of paternity." After a hearing in October, 1981, the family court commissioner ordered James to pay temporary child support of $303 per month for the three minor children, but did not order temporary maintenance for Mary. A wage assignment was used to effectuate the child support order. Subsequently, a guardian ad litem was appointed and blood tests ordered. Throughout the pendency of this action, Mary and the children received Aid to Families with Dependent Children (AFDC). As a result, James' support payments were transferred from Milwaukee County to the state pursuant to secs. 49.19(4)(h)1b and 767.29(2), Stats. Thus, it is the state and Milwaukee County who oppose James' recoupment claim in this action.[1]

---

[1] The state became a real party in interest in this action pursuant to sec. 767.075, Stats., which provides as follows:

At a bench trial in September, 1984, James was adjudicated not to be the father of the twins and an oral judgment of divorce was rendered. Child support for the twins was terminated, and Mary was awarded temporary maintenance of $75 per week commencing in December, 1984.

When James moved the court to order the state to refund two-thirds of his child support payments from 1981 to 1984, the trial court denied the motion and issued a *sua sponte* order backdating Mary's maintenance *nunc pro tunc* to November, 1981. In its abbreviated findings of fact, the trial court acknowledged that the family court commissioner did not order James to pay maintenance in October, 1981. The court found, however, that "equitably petitioner *should have been ordered* to pay maintenance during the pendency of this action, in addition to child support." [Emphasis added.] This finding was the sole basis for the trial court's *nunc pro tunc* order.

Pursuant to sec. 767.23(1), Stats., a family court commissioner may issue a temporary maintenance order during the pendency of the divorce action after considering the factors outlined in sec. 767.26, Stats. *See* sec. 767.23 (1n). Any decision made by the commissioner must be reviewed by the court if any party to the action so moves. Sec. 767.13(1m), Stats.

In the instant case, the record shows that the family court commissioner issued a temporary order for child support in October, 1981, but made no mention of maintenance. Neither party to this appeal mentions any request for maintenance by Mary or any motion for a review of the court commissioner's order. Thus, the

Whenever aid under s. 49.19 or 49.45 is provided a dependent, the state shall be deemed a real party in interest within the meaning of s. 803.01 for purposes of securing reimbursement of aid paid, future support and costs as appropriate in an action affecting the family.

validity of the court commissioner's October, 1981 order is not before us. Instead, we are confronted with the question whether the trial court had the authority to alter this order more than three years after it was made.

A trial court in Wisconsin has no authority to make an order directing the retroactive increase of support payments. *Foregger v. Foregger*, 40 Wis. 2d 632, 645, 162 N.W.2d 553, 559 (1968), *reh'g denied*, 40 Wis. 2d 648b, 164 N.W.2d 226 (1969). We do not deem it unreasonable to conclude that this denial of authority extends to the *creation* of a support obligation, as the following analysis of *nunc pro tunc* orders clearly demonstrates.

Translated from Latin, *nunc pro tunc* means "now for then." In other words, "a thing is done now, which shall have [the] same legal force and effect as if done at [the] time when it ought to have been done." *Black's Law Dictionary* 964 (5th ed. 1979) (citing *State v. Hatley*, 384 P.2d 252, 254 (N.M. 1963)). Our supreme court, however, has clearly limited the authority of Wisconsin courts to retroactively decide what "ought to have been done" in the past. In *Zahorka v. Geith*, 129 Wis. 498, 507, 109 N.W. 552, 556 (1906), the court stated:

> The rule is that in any case where the court did actually render a formal judgment, but the same has not been entered on the record in consequence of any *accident* or *mistake*, or through the *neglect or misprision of the clerk*, the court has power to order that the judgment once pronounced be entered *nunc pro tunc*, upon the production of proper evidence to establish the fact of the judgment and to show its terms and character and the relief granted; and this may be done after the expiration of the term at which the judgment was originally given. [Emphasis added; citation omitted.]

Utilizing this rule, the *Zahorka* court affirmed a 1904 Circuit court judgment of divorce *nunc pro tunc* to 1890. *Id.*

A court's *nunc pro tunc* authority is thus limited to rectifying what might be termed "mechanical errors" in our judicial system. This fact was underscored by the supreme court in *Estate of Gibson*, 7 Wis. 2d 506, 515, 96 N.W.2d 859, 864 (1959):

The circuit court has power even after the term to correct its judgment or to add omitted portions thereto to conform the judgment to that actually pronounced. *A court cannot modify or amend its judgment to make it conform to what the court ought to have or intended to adjudge.* [Emphasis added.]

As explained by the Montana Supreme Court: "The test is whether . . . the change will make the record speak the truth as to what was actually determined or done, or intended to be determined or done by the court, or whether . . . it will alter such action or intended action." *State ex rel. Kruletz v. District Court*, 98 P.2d 883, 885 (Mont. 1940). *See Aabye v. Aabye*, 292 N.W.2d 92, 95 (N.D. 1980).

Here, the trial court clearly based its decision on a finding that "equitably petitioner should have been ordered to pay maintenance" in 1981. The purpose and effect of this *nunc pro tunc* order was to alter the record, not to correct it. Because the trial court had no authority to make such an alteration, it erred as a matter of law in issuing the *nunc pro tunc* order, and we therefore reverse.

James next asserts that his equitable claim for recoupment is not barred by the statutory presumption of paternity, and that the trial court misused its discretion by denying his motion for a refund of monies allocated to support the twins from 1981 to 1984. Although we agree with James' arguments, and therefore reverse the

summary denial of his recoupment claim, we cannot conclude from the record before us that equity dictates a refund and, if so, in what amount.

We first consider the issue of paternity by statutory presumption. The county argues that because James was presumed to be the twins' father during the period in which he made child support payments, the trial court had no authority to fashion the equitable remedy sought by James. We disagree. The presumptions contained in secs. 891.39 and 891.41, Stats., are rebuttable, not conclusive. Because the presumption of paternity has been successfully rebutted by James, it disappears from the case and does not bar the trial court from exercising its equitable powers. The statutes provide that matters of temporary child support are subject to review and revision, *see* secs. 767.23(1n) and 767.32(1), Stats., and case law establishes that a divorce court may exercise equitable powers, particularly in matters relating to child custody and support. *See Dovi v. Dovi,* 245 Wis. 50, 55, 13 N.W.2d 585, 588 (1944).

In the instant case, the trial court made no findings of fact or conclusions of law concerning the equities of James' claim. Although a divorce court has discretion to reduce or eliminate support arrearages, *Whitwam v. Whitwam,* 87 Wis. 2d 22, 30, 273 N.W.2d 366, 370 (Ct. App. 1978), it is not clear from the limited record before us whether James seeks to cancel arrearages, recoup payments made, or both. We therefore remand this cause to the trial court for further proceedings to determine the merit of James' recoupment claim.

*By the Court.*—Order reversed and cause remanded with directions.