Annette L. GERHARDT, as guardian ad litem for Heather Jo Krueger, Plaintiff-Appellant,

v.

ESTATE OF Arlen L. MOORE, Defendant-Respondent.

Supreme Court

*No. 85-0943. Argued May 31, 1989.—Decided June 28, 1989.*

(Also reported in 441 N.W.2d 734.)

For the plaintiff-appellant there was a brief by *Annette L. Gerhardt* and *Conway, Conway & Gerhardt, S.C.,* Baraboo, and oral argument by *Annette L. Gerhardt.*

For the defendant-respondent there was a brief by *Gary Alan Hebl* and *Hebl and Hebl,* Sun Prairie, and *Michael B. Van Sicklen* and *Foley & Lardner,* Madison, and oral argument by *Mr. Van Sicklen.*

Amicus curiae brief was filed by *Donald J. Hanaway,* attorney general, *Donald P. Johns,* assistant attorney general, for the State of Wisconsin, and *Sherwood K. Zink,* legal counsel for Wisconsin Office of Child Support.

WILLIAM A. BABLITCH, J.   This case is on remand from the United States Supreme Court for further consideration in light of *Clark v. Jeter,* 486 U.S. —, 108 S. Ct. 1910 (1988).[1] The primary issue presented on remand is whether a statutory provision denying nonmarital children involved in lump-sum child support settlements the ability to seek additional support from the father, a right not denied marital children, amounts to a denial of the equal protection of the law. If so, other issues include whether the trial court has authority to order retroactive support payments, and whether an admission of paternity reached in the settlement proceedings remains valid.

Because marital children are not precluded from seeking additional child support notwithstanding a prior court order setting the amount of support, we conclude that prohibiting nonmarital children involved in lump-sum settlement agreements from seeking additional support amounts to a denial of equal protection. Consistent with prior Wisconsin case law prohibiting retroactive increases in child support involving marital children, we further conclude that the trial court may consider increased child support only from the date that the

---

[1] All subsequent page references to *Clark v. Jeter* are to the Supreme Court Reporter citation.

action for increased child support was filed and notice given. Finally, we conclude that the facts of this case preclude disturbing the admission of paternity. Accordingly, we reverse the order of the circuit court dismissing the action and remand for further proceedings not inconsistent with this opinion.

We begin by briefly reiterating the facts. Heather Jo Krueger (Krueger) was born out of wedlock to Betty Lou Krueger on September 7, 1969. Sometime thereafter, the State of Wisconsin, by Betty Lou Krueger, filed an action against Arlen L. Moore (Moore) under Chapter 52, Stats. 1967, seeking to have Moore adjudicated the father of Krueger and seeking contribution for the child's support. An agreement was entered on October 27, 1970, pursuant to sec. 52.28, Stats. 1967, whereby Moore admitted paternity and agreed to a lump-sum payment for support. The agreement was drafted by an assistant district attorney and signed by Moore, Betty Lou Krueger, and their respective attorneys. In addition, the agreement was approved by the corporation counsel and the circuit court judge. Findings and a judgment, based on the agreement, were also signed by the judge.

Under the settlement, Moore agreed to pay a total of $4,600.00 over a period of time as a lump-sum settlement for child support, and medical expenses paid by Sauk county as a result of Krueger's birth. The agreement contained a clause stating:

> That this agreement and full and complete performance thereof shall constitute full and final settlement of this action, pursuant to the provisions of Chapter 52, Wisconsin Statutes 1967.

Moore complied with the terms of the agreement and made all payments in a timely manner. Moore's

obligation under the agreement ended with his last payment in late 1974.

On November 20, 1984, Krueger, by her guardian ad litem, commenced this action against Moore, now deceased, seeking an order requiring Moore to pay 17 percent of his gross income from November 1, 1974, for past, present, and future support. Krueger also sought to be named as the irrevocable primary beneficiary of a life insurance policy, as well as receive certain other insurance benefits. Moore moved to dismiss the action on the grounds that it raised issues previously adjudicated in the settlement proceedings. The circuit court dismissed the action.

We granted certification of the issues and affirmed the circuit court. *Gerhardt v. Estate of Moore,* 139 Wis. 2d 833, 407 N.W.2d 895 (1987). We concluded that the cause of action had been previously litigated and the 1970 paternity agreement, having been complied with fully, barred Krueger from receiving any additional support. *Id.* at 845. Moreover, we held that paternity proceedings under Chapter 52, Stats. 1967, did not constitute a denial of equal protection. *Id.* at 845–46.

Krueger petitioned the United States Supreme Court for review. On June 6, 1988, the Court issued its decision in *Clark.* After announcing its decision in *Clark,* the Court on June 13, 1988, granted certiorari in *Gerhardt,* 108 S. Ct. 2814. An order was issued which vacated this court's decision and remanded the matter for further consideration in light of the decision in *Clark.*

I.

The primary issue on remand is whether under *Clark,* the lump-sum child support provision pursuant to Chapter 52, Stats. 1967, denying nonmarital children the

567

right to seek additional child support from their fathers, imposes an unconstitutional deprivation that is not shared by marital children, in violation of the equal protection clause. We conclude that the lump-sum settlement provision is not substantially related to its asserted state interests and therefore denies nonmarital children the equal protection of the laws.

*Clark* is the most recent in a substantial body of United States Supreme Court decisions applying equal protection analysis to state statutory schemes affecting the rights of nonmarital children. The decision struck down a Pennsylvania statute which required that a suit to establish paternity and seek support be brought within six years of a nonmarital child's birth. By contrast, a marital child could seek support at any time. *See Id.,* 108 S. Ct. at 1912.

*Clark* reflected a progression from *Gomez v. Perez,* 409 U.S. 535 (1973), which found disparate statutory treatment between marital and nonmarital children to be constitutionally invalid. The *Gomez* decision held that the laws of Texas could not constitutionally grant marital children the right to support from their natural fathers while at the same time denying that right to nonmarital children. In so holding, the Court stated that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." *Id.* at 538; *see also,* Krause, *Equal Protection For The Illegitimate,* 65 Mich. L. Rev. 477 (1967).

In response to the constitutional requirements of *Gomez,* Texas created a one-year limitations period during which a nonmarital child could establish paternity. This legislation was struck down by the Court in *Mills v. Habluetzel,* 456 U.S. 91 (1982). The Court noted that the response to *Gomez* was "less than generous," and con-

cluded that the one-year statute of limitations severely "truncated" the opportunity for nonmarital children to obtain financial support from their natural fathers, an opportunity not denied marital children. *Mills,* 456 U.S. at 94.

Significantly, the equal protection analysis in *Mills* focused on two related requirements: first, the Court held that the period for obtaining support must be sufficiently long in duration to present a reasonable opportunity to obtain support, given the difficult personal, family and financial circumstances that often surround the birth of a child out of wedlock. *Id.* at 99. Second, the time limitation must be substantially related to the state's interest in avoiding the litigation of stale or fraudulent claims. *Id.* at 99–100.

During the next term, the Court invalidated a two-year statute of limitations in *Pickett v. Brown,* 462 U.S. 1 (1983). The Court concluded that under the first requirement outlined by *Mills* the two-year period was only a small improvement over the one-year statute of limitations, and thus also amounted to a restriction effectively extinguishing the support rights of nonmarital children. The Court further concluded that under the second requirement the time limitation was not substantially related to the state's interest in avoiding stale and fraudulent claims. *Pickett,* 462 U.S. at 13.

It was against this background that the Court concluded that the six-year statute of limitations involved in *Clark* also violated the equal protection clause. The Court initially noted:

> Even six years does not necessarily provide a reasonable opportunity to assert a claim on behalf of an illegitimate child. 'The unwillingness of the mother to file a paternity action on behalf of her child, which could stem from her relationship with

the natural father or . . . from the emotional strain of having an illegitimate child, or even from the desire to avoid community and family disapproval, may continue years after the child is born. The problem may be exacerbated if, as often happens, the mother herself is a minor.' *Clark,* 108 S. Ct. at 1915 (quoting *Mills,* 456 U.S. at 105, n. 4 (O'Connor, J., concurring)).

However, the Court did not rest its decision on the ground that a six-year limitations period provided an inadequate window of opportunity in which to obtain support for nonmarital children, since it was "not entirely evident that six years would necessarily be an unreasonable limitations period for child support actions involving illegitimate children." *Id.* at 1915. Instead, the Court held that the six-year statute of limitations was not substantially related to the asserted state interest in avoiding the litigation of stale or fraudulent claims. *Id.*

In so holding, the Court in *Clark* reiterated the levels of scrutiny under which it examines whether statutory classifications violate the equal protection clause. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. On the other end of the spectrum, classifications based on race or national origin, and classifications affecting fundamental rights are given the most exacting scrutiny. Between these spectrums of rational basis and strict scrutiny lies a level of intermediate scrutiny "which generally has been applied to discriminatory classifications based on sex or illegitimacy." *Id.* at 1914 (citations omitted).

Therefore, to withstand intermediate scrutiny, a statutory classification such as the one at issue in the present case must be substantially related to an impor-

tant governmental objective. *Id.; accord, In re Paternity of B.W.S.,* 125 Wis. 2d 212, 215, 371 N.W.2d 379 (Ct. App. 1985), *aff'd,* 131 Wis. 2d 301 (1986).

Moore's estate argues that the paternity proceedings under Chapter 52, Stats. 1967, prohibiting additional child support, are substantially related to several legitimate state interests. These may be summarized primarily as interests in finality and promoting settlements. The estate insists that the statutory provisions offered the parties an alternative to trial and the accompanying risk of losing the paternity issue. According to the estate, the settlement provisions thereby reduced the number of nonmarital children who would otherwise obtain no support and burden the state's welfare system in the event of failure of proof at trial on the paternity issue. Moreover, the settlement provisions purportedly had the residual effect of reducing litigation generally, which also lessened the burden on the state court system.[2] We disagree.

Although it is argued that Chapter 52, Stats. 1967, provided nonmarital children an additional option in the form of a lump-sum settlement provision, it is an option that has in reality worked to the detriment of many nonmarital children. It is, at best, an illusory benefit amounting to no benefit at all. It is, in reality, an additional burden. Similar to the procedural bars invalidated in the *Clark* line of cases, the lump-sum settlement provision deprives certain nonmarital children the opportu-

---

[2] Moore's estate also argues that this court is precluded from voiding a judgment based on a statute later declared unconstitutional, where the parties to the original judgment did not challenge the constitutionality of the statute. *Chicot County Dist. v. Bank,* 308 U.S. 371, 374–76 (1940). However, Krueger's action does not seek voidance of the original judgment and we therefore decline to address the argument.

nity to obtain adequate support. Although *Clark* and the cases cited therein deal with statutory limitation bars to the filing of actions, the bar to seeking additional child support that results from a lump sum agreement works in precisely the same manner. Regardless of the label attached to the statutory bar, the result is the same. The nonmarital child, unlike the marital child, is barred from seeking additional support, regardless of need. That is hardly fair to the nonmarital child, much less constitutional. That is what the United States Supreme Court recognized in remanding this action, and that is what we recognize today.

The lump-sum payment provision authorized in Chapter 52, Stats. 1967, was in effect until 1981. To encourage the settlement of paternity cases, sec. 52.38, cited below,[3] prohibited the revision or alteration of such settlements unless the father failed to comply with the terms of the settlement, or the judgment provided for monthly support. *Id.;* 36 Op. Att'y Gen. 222, 224 (1947); *State ex rel. Green v. Williams,* 49 Wis. 2d 752, 759, 183 N.W.2d 37 (1971). Thus, under this statutory provision

---

[3] **52.38 Continuing jurisdiction; revision of judgment or agreement. (1)** Whenever settlement has been made pursuant to s. 52.37 and the defendant fails to comply with the terms of such settlement, or whenever the judgment or agreement providing for the monthly support of a child born out of wedlock has been docketed or filed, the court shall have continuing jurisdiction and may, on the petition of the district attorney, the trustee, the mother, the named or adjudicated father, or any other person, agency or institution having legal custody of the child or upon stipulation signed by the defendant and the person, agency or institution having legal custody of the child and approved by the district attorney, revise and alter such judgment or agreement respecting the amount of support and the payment thereof and in its discretion may provide for or increase or decrease the amount of future support, and may make such further judgment or order as the circumstances of the parties require.

nonmarital children now ages eight through eighteen have no right to seek additional child support from their fathers if the district attorney or their mother entered into a lump-sum agreement such as that involved here. Upholding this inability to seek additional support from their fathers would deprive Krueger and certain other nonmarital children of something which marital children have always had, and which nonmarital children now have, namely the right to seek support from both their parents during the whole of their minority. In the absence of a substantial relationship to legitimate state interests, such a classification unconstitutionally discriminates against those nonmarital children by denying them substantial benefits accorded children generally. *See Gomez,* 409 U.S. at 538.

We are unpersuaded that the statutory scheme is substantially related to its asserted state interests. To begin with, it is difficult to see how the interest in promoting settlements justifies a total waiver of future child support regardless of the child's future needs or the father's ability to pay. As a practical matter, when an admission of paternity was obtained in the manner presented here, the benefits to the child were often so minimal that the admission of paternity had almost no value to anyone except to the county which had its medical costs covered. Somewhat ironically, while the child lost all right to require the father to provide additional support, the unmarried father's rights remained fully protected after such an agreement. Presumably, the father could subsequently assert visitation and even seek support from the mother who waived future child support in exchange for an admission of paternity.

Furthermore, the risk of losing the paternity issue at trial and burdening the state's welfare system is undercut by the countervailing state interest in the continued

adequacy of support for the child. Contrary to the estate's perception, denying nonmarital children the ability to obtain additional child support from their fathers regardless of future circumstances could itself result in an increased burden on the state welfare system. Similarly, the interest in finality is undercut by the fact that Krueger would not be barred from seeking additional support had the State and her mother never brought the original suit, or if the settlement and judgment in that suit had provided for periodic payments rather than a lump-sum. The elimination of the statutory bar in 1981 also suggests that the interest in finality was viewed as less than overwhelming by the legislature.

Accordingly, we conclude that the statutory classification fails to bear a substantial relationship to its asserted state interests. Prohibiting nonmarital children involved in lump-sum child support settlements the ability to seek additional support, not denied marital children, amounts to a denial of the equal protection of the law. We therefore reverse the order of the circuit court dismissing Krueger's petition for additional support.

## II.

Krueger's action, filed on November 20, 1984, seeks relief from November 1, 1974, the date upon which Moore's support obligation ended under the settlement agreement. General principles typically applied to marital children do not support such a result. We conclude that Krueger's request for additional support payments may not be given retroactive effect.

Wisconsin case law has allowed trial courts discretion to order retroactive reductions or prospective

574

increases in support for good cause.[4] However, it has consistently prohibited retroactive increases in support payments. *See, e.g., Foregger v. Foregger,* 40 Wis. 2d 632, 645, 162 N.W.2d 553 (1968), *reh'g denied,* 40 Wis. 2d 632, 164 N.W.2d 226 (1969); *Whitwam v. Whitwam,* 87 Wis. 2d 22, 30, 273 N.W.2d 366 (Ct. App. 1978); *Marriage of Greenwood v. Greenwood,* 129 Wis. 2d 388, 391, 385 N.W.2d 213 (Ct. App. 1986); *In re Paternity of P.J.W.,* 150 Wis. 2d 123, 441 N.W.2d 289 (Ct. App. 1989). This denial of authority extends to the creation of a support obligation. *See In re Marriage of Strawser v. Strawser,* 126 Wis. 2d 485, 489, 377 N.W.2d 196 (Ct. App. 1985); *see also In re Paternity of R.W.L.,* 116 Wis. 2d 150, 163, 341 N.W.2d 682 (1984).

Krueger's argument is essentially that children who believe they have not been provided necessary support have a cause of action against their parent for such support as the child, in retrospect, believes would have been appropriate. We decline to adopt such a position. As this court stated in *Foregger,* 40 Wis. 2d at 644: "[t]he whole tenor of the statute seems to envision prospective relief. Thus, when a change of circumstances arises which requires a change in support payments, the statute requires the party seeking the change to petition the court for relief." This language applies with equal force to Krueger's present action for additional support.

---

[4]In 1986, Congress enacted legislation requiring states to prohibit the retroactive decrease of child support orders. *See* 42 U.S.C. sec. 666(a)(9)(C). In 1987, the Wisconsin legislature passed sec. 767.32(1m), Stats., to comply with the federal amendment. Under sec. 767.32(1m), "the court may not revise the amount of child support, maintenance payments or family support payments due prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations."

As mentioned, a petition seeking additional support together with notice was filed on November 20, 1984. Krueger also sought to protect her right to support during the pendency of the petition by requesting temporary support under sec. 767.23(1), Stats. *See In re Marriage of Harris v. Harris,* 141 Wis. 2d 569, 585 n. 12, 415 N.W.2d 586 (Ct. App. 1987). Therefore, the trial court has authority to order additional child support prospectively from the date Krueger petitioned the court for relief and notice was given to Moore.

## III.

Finally, we turn to the issue whether Moore's admission of paternity remains valid under the circumstances of this case. Moore's estate insists that the lump-sum payment was the inducement for Moore to admit paternity. Therefore, Moore asserts it would be unfair to now permit Krueger to proceed for additional support based upon Moore's admission of paternity when that admission was the consideration for the lump-sum settlement eighteen years ago.

Conversely, Krueger argues the statutory scheme under Chapter 52, Stats. 1967, clearly distinguishes the issues of paternity and support. Krueger contends the statute did not require that Moore admit paternity in order to settle the lump-sum child support issue, but nevertheless he did and his estate is now bound by that admission. Furthermore, Krueger asserts that equity requires this result, particularly in a situation such as the present where the putative father is now deceased and his body cremated.

We conclude that the unusual facts of this case preclude disturbing the admission of paternity. Where the putative father who has admitted paternity is since deceased and his body cremated, posthumous proof of paternity would be imprecise and unreliable, if not impossible. *See In re Estate of Blumreich*, 84 Wis. 2d 545, 562-63, 267 N.W.2d 870 (1978), *appeal dismissed*, 439 U.S. 1061 (1979); *Cf. Estate of Bailey*, 205 Wis. 648, 655, 238 N.W. 845 (1931). Presumably no tests are now available to her to prove the paternity already admitted.

We need not address the question of whether paternity should be reopened under some other set of facts such as when the alleged father who admitted paternity is still alive and asserts that he admitted paternity only in consideration of obtaining a final settlement in the child support proceedings. We note, however, that in such circumstances, the difficulty of proving or disproving paternity has been greatly alleviated by recent scientific developments in blood testing. *Pickett*, 462 U.S. at 11 (quoting *Mills*, 456 U.S. at 104 n. 2 (O'Connor J., concurring)).

*By the Court.*—The order of the circuit court is reversed and remanded for further proceedings.

CALLOW, WILLIAM G., J. (dissenting). I dissent and maintain that we should affirm our earlier decision in this case, *Gerhardt v. Estate of Moore*, 139 Wis. 2d 833, 407 N.W.2d 895 (1987). The analysis in that opinion was correct and it is not affected in any way by the United States Supreme Court decision in *Clark v. Jeter*, 108 S. Ct. 1910 (1988).

The majority is wrong in concluding that the principles set forth in *Clark* require us to find that the child in this case was denied the equal protection of law. *Clark*

dealt with a six-year statute of limitations for bringing paternity and child support actions on behalf of nonmarital children. The Court in *Clark* noted that it was questionable whether a mother would bring such an action within the six-year period and therefore found that the Pennsylvania statute of limitations placed an unconstitutional burden on nonmarital children.

The case before us does not involve a statute of limitations. Rather, it involves a statute which makes it easier for nonmarital children to obtain child support. The statute does not deny a right, it simply grants an alternative right. As we held in the original opinion, the statute provides "an additional, optional method for satisfying a support obligation." *Gerhardt,* 139 Wis. 2d at 846. Where the statute of limitations in *Clark,* according to the Supreme Court, might prevent a mother from bringing a support claim on behalf of the nonmarital child because she might not act to protect the child's interest in a timely manner, the settlement provision of the Wisconsin Statutes at issue in this case *encourages* her to do so. The application of res judicata in this case merely bars a *second* child support action after the child, through its mother, had already exercised its rights and received child support.

The original opinion is correct when it concludes that the Wisconsin statute, by relying on the mother to enforce the child's support rights, adequately protects the child's interests. The child's interests are virtually represented by the mother who, like the child, has a powerful interest in obtaining child support. *Gerhardt,* 139 Wis. 2d at 840. When support is not provided by the father the obligation for support of the child falls upon the mother. *Id.* at 841. When the support statute was in effect the mother and the child's interest could be accommodated by initiating an action for support as was

done in this case. When such an action was commenced the mother who virtually represented the child's interest could negotiate a settlement and avoid a trial which might result in a finding that the defendant was excluded from paternity. Alternatively, the alleged father might not be excluded from paternity. At the time of this settlement agreement medical technology did not have the necessary expertise to identify the father. Our many cases recognized that blood typing could only exclude a person from parenthood. Accordingly, the legislature gave the parties the option of contracting to settle paternity subject to court approval. This was a reasonable alternative to a trial. It encouraged reluctant mothers to seek support and avoid trials which could be traumatic for the parties and could result in the alleged father being excluded from paternity and the child receiving no support.

Having incorrectly concluded that the statute violates the equal protection clause, the majority arrives at a result that is fundamentally unfair in two ways. First, on remand this case may result in a sum of money being paid to the nonmarital child who is now an adult and who may have contributed little or nothing to her own support during her minority. Such an amount would essentially be a windfall to her.

Second, the majority opinion is unfair in its treatment of the original settlement. As we noted in the original opinion, a settlement of this kind by its nature involves the making of compromises on such issues as the amount of the child support to be paid and the admission of paternity itself. *Id.* at 843. The statute recognized there may be compelling reasons to settle the case. Although the record in this case is unclear, it is possible that Moore admitted his paternity only as part of a bargain which limited his liability. The child's

mother obtained the admission of paternity and $4,600.00 for the child's support and medical expenses and was able to avoid the costs and uncertainties of a full-scale paternity suit. This was a bargain accepted by all parties who participated in it.

It is patently unfair and a violation of contract law principles to reopen, nineteen years later, one part of the bargain, the amount of child support, without reopening the other, the admission of paternity itself. But this is what the majority has done. Fairness and equity require that the original settlement be upheld. If it is not upheld the whole matter should be reopened and the burden to prove paternity should be placed on the child seeking additional support.

For the foregoing reasons I respectfully dissent.

I am authorized to state that JUSTICE LOUIS J. CECI joins in this dissenting opinion.