568 So.2d 117 (1990)
Tomas Benido VALDES, Appellant,
v.
Anna Marie LAMBERT, Appellee.
No. 89-1781.
District Court of Appeal of Florida, Fifth District.
October 18, 1990.
Cynthia L. Green of Law Offices of Greene and Greene, P.A., Miami and Marcia K. Lippincott of Marcia K. Lippincott, P.A., St. Orlando, for appellant.
Olen W. Meredith of The Meredith Firm, P.A., St. Augustine, for appellee.
COBB, Judge.
Anna Marie Lambert brought a paternity action in 1986 against Tomas Valdes for support, past and future, for her son, Jerry E. Lambert, Jr., conceived and born in 1979 during her marriage to Jerry E. Lambert, Sr. Lambert, Sr. was not a party to the action. Valdes's answer denied paternity and asserted, inter alia, the affirmative defense of laches. The trial court struck the defense on the basis that laches, as a matter of law, could not apply to any paternity action filed during the minority of the minor child whose paternity is at issue.
The trial court also ordered HLA blood testing on Anna, Valdes, Lambert, Sr., and the child. The test results indicated a 99.9% probability that Valdes was the *118 child's natural father, and no possibility that Lambert was. Based upon the tests, affidavits supporting the regularity of the processing, and an affidavit of Lambert that she engaged in sexual intercourse with only Valdes and Lambert during the conception period, Lambert filed a motion for summary judgment on the issue of paternity "pursuant to section 742.12, Florida Statutes." That statute, which became effective October 1, 1986, provides in section (1) thereof:
(1) In any proceeding to establish paternity in law or in equity, the court on its own motion may or upon request of a party shall require the child, mother, and alleged fathers to submit to Human Leukocyte Antigen tests or other scientific tests, together with the opinions and conclusions of the test laboratory, shall be filed with the court. Test results are admissible in evidence and should be weighed along with other evidence of the paternity of the alleged father unless the statistical probability of paternity equals or exceeds 95 percent. A statistical probability of paternity of 95 percent or more creates a rebuttable presumption, as defined by s. 90.304, that the alleged father is the biological father of the child. If a party fails to rebut the presumption of paternity which arose from the statistical probability of paternity of 95 percent or more, the court may enter a summary judgment of paternity. If the HLA test results show the alleged father cannot be the biological father, the case shall be dismissed with prejudice.
In opposition to the motion, Valdes filed no affidavits, but his counsel argued that section 742.12 was not applicable because its effective date was five months after commencement of this action. He also argued that the presumption of legitimacy precluded summary judgment, particularly in light of Lambert's admission of intercourse with her husband during the critical time period. Valdes also argued that the affidavits in support of the testing process were legally insufficient.
The trial court granted partial summary judgment on the issue of paternity and set the case for non-jury trial. Valdes did not appear. The trial court entered a final judgment repeating the paternity finding and ordering Valdes to pay $800.00 per month prospective child support, a total sum of $92,800.00 in retroactive support, an attorney's fee of $25,000.00, and costs. Valdes appeals from that judgment.
We cannot agree with the appellant that the trial judge erred by striking the defense of laches, albeit for the wrong reason. The defense, as pled, was conclusory and set forth no ultimate facts showing that the plaintiff was barred by laches. Cf. Department of Health and Rehabilitative Services v. Thomas, 477 So.2d 1053 (Fla. 5th DCA 1985), review denied, 488 So.2d 829 (Fla. 1986); Robinson v. State, Department of Health and Rehabilitative Services, 473 So.2d 228 (Fla. 5th DCA), dismissed, 478 So.2d 53 (Fla. 1985).
We do agree, however, with the appellant's contention that it was error for the trial court to order "retroactive" child support against him  i.e., support predating the commencement of the instant paternity action. At common law an illegitimate child had no legal right to any support from his father. Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). Nor is there any statutory basis in Florida for the award of retroactive support for an illegitimate child. Several cases have granted such relief, predicating their awards on the rationale of McQueen v. Stratton, 389 So.2d 1190 (Fla. 2d DCA 1980).[1]McQueen relied upon section 742.041, Florida Statutes, which was repealed in 1986, as authority for an award of child support retroactive to the birth of the child. That statute, however, merely provided guidelines for trial courts in respect to amounts to be awarded for the care and support of illegitimate children at various stages of their minority ranging from birth *119 to the age of 18, allowing discretion in the trial judge to increase or decrease such amounts depending upon the circumstances and ability of the defendant. The statute, contrary to the opinion in McQueen, had nothing whatsoever to do with the award of retroactive support. Moreover, as pointed out by the appellant, such an award raises a serious problem in regard to the constitutional mandate of equal protection. It is now established law that the rights of illegitimate children are to be considered on an equal basis with the rights of legitimate children. See, State, Department of Health and Rehabilitative Services v. West, 378 So.2d 1220 (Fla. 1979). It is also well established that the parent of a legitimate child may obtain support only from the time of the filing of the action seeking support. See, e.g., Warren v. Warren, 306 So.2d 197 (Fla. 1st DCA 1974).[2] Thus, if support for illegitimate children may be awarded retroactively to a time earlier than the filing of an action for paternity, then there is disparate treatment of legitimate and illegitimate children and a violation of the equal protection of the law.
Moreover, even if an action for retroactive child support were available, as contended by Anna Maria Lambert, the right to bring that action in this case would belong to Jerry E. Lambert, Sr., not to her. It is candidly admitted by the appellee in her brief that Lambert, Sr., assumed support of the child in accordance with the presumption of legitimacy. The appellee also states in her brief, citing to the case of Weinstein v. Weinstein, 148 So.2d 737, 738 (Fla. 3d DCA 1963), "that when another person discharges the duty of the natural father to support his child, then the natural father should be required to reimburse those sums." Obviously, that reimbursement would be due to the person who discharged the duty  in this case Lambert, Sr. There would be serious questions in regard to laches and estoppel depending on whether those payments were made by Lambert, Sr. with knowledge of the child's true paternity. The doctrine that one who stands in loco parentis to a child is bound for the maintenance and care of that child may also be implicated. See 25 Fla.Jur.2d Family Law, § 78. Thus, while the question of whether Jerry Lambert, Sr., may bring a successful cause of action against the natural father is interesting, it is not before us at this time.[3]
The attorney's fee award entered by the trial court was not supported by any findings of fact. See Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla. 1985). Presumably, the trial court took into consideration the large retroactive support award in assessing the amount of attorney's fees. For these reasons, that award must also be reversed, and reconsidered by the trial court at a noticed hearing.
The judgment entered below is reversed in regard to the award of retroactive support and the award of attorney's fees; it is otherwise affirmed.
*120 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
DAUKSCH and GRIFFIN, JJ., concur.
NOTES
[1] See, e.g., Watkins v. Jackson, 487 So.2d 99 (Fla. 4th DCA 1986); Pensa v. Sklinar, 547 So.2d 284 (Fla. 2d DCA 1989).
[2] In Wisconsin, as in Florida, there is no statutory authority for the award of retroactive support for either marital or non-marital children, and it has been denied on that basis. See Gerhardt v. Estate of Moore, 150 Wis.2d 563, 441 N.W.2d 734 (1989).
[3] Another interesting question, which was not raised below or on appeal, is whether Jerry E. Lambert, Sr., may be an indispensable party to this litigation. He was the husband of the child's mother at the time of conception and at the time of birth, and has provided parental support to the child since that time. Given the strong public policy in Florida favoring the legitimacy of children, it seems anomalous that a trial court can declare a presumptively legitimate child illegitimate without the joinder of his presumptive father. It would seem that due process for both the child and Lambert, Sr., would require that the presumptive father receive formal notice and the opportunity to be heard and to challenge the illegitimacy of the child. The natural father of illegitimate children, who provides them support, is entitled to notice and hearing before they can be declared dependent. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In the landmark case of Gammon v. Cobb, 335 So.2d 261 (Fla. 1976), which incepted the right of a married woman to file a paternity action in Florida, the plaintiff had been separated from her spouse for some twenty years, during which time she lived with the natural father and during which time the children for whom she sought support were born. Lambert, Sr., is in a position much different than that of the absent and non-contributing spouse in Gammon.