STATE OF MINNESOTA, County of Douglas, Karen J. Haugen, and J.N.H., a minor child, by and through her guardian, Bonnie Johnson, Plaintiffs and Appellees,

v.

Bradley John SNELL, Defendant and Appellant.

Civ. No. 920212.

Supreme Court of North Dakota.

Dec. 14, 1992.

---

Neil T. Gillund, Asst. State's Atty., Fargo, for plaintiffs and appellees.

Neil W. Fleming of Fleming, DuBois & Trenbeath, Cavalier, for defendant and appellant.

VANDE WALLE, Justice.

Bradley Snell appealed from an amended judgment of the district court which increased his child support obligation from $125 per month to $362 per month. We affirm.

In 1986, a paternity action was commenced by the State of Minnesota on behalf of Karen Haugen which alleged that Bradley Snell was the father of Karen's daughter, Jocelyn, born in 1982. Pursuant to the Revised Uniform Reciprocal Enforcement of Support Act, codified in North Dakota as Chapter 14–12.1, NDCC, the action was transferred to Cass County North Dakota, Bradley's domicile. Bradley and Karen never married or cohabited, nor did Bradley hold Jocelyn out as his own daughter, visit her, or acknowledge his paternity. Blood tests were taken, and it was determined that Bradley was the likely father of Jocelyn. To avoid extending the litigation, Bradley stipulated to entry of judgment. The stipulation included Bradley's signed acknowledgment of paternity and his agreement to pay $125 per month in child support until Jocelyn reached eighteen, married, or became emancipated. The stipulation was accepted by the court and formed the basis of its judgment which was entered on November 12, 1986.

In 1991, the local Regional Child Support Enforcement Unit brought a motion to amend the child support judgment to increase Bradley's support obligation based upon his increase in salary. The court held that it had "continuing jurisdiction to modify support in paternity matters" and thereby increased Bradley's support payments to $362 per month to conform with the child support guidelines as promulgated by the North Dakota Department of Human Services.

Bradley presents two issues for our consideration: (1) whether the district court had jurisdiction to amend the original judgment and to increase the amount of child support, and (2) if the district court had jurisdiction to modify the original judgment, whether it properly applied the child support guidelines.

### Jurisdiction to Modify the Support Award

■ Courts which award periodic child support retain the authority to modify the amount to be paid when there has been a showing that the circumstances of the parties have materially changed. NDCC § 14–17–17; *Clutter v. McIntosh,* 484 N.W.2d 846 (N.D.1992); *Sweeney v. Hoff,* 478 N.W.2d 9 (N.D.1991). With regard to Bradley's contention that the court does not have jurisdiction to modify the amount of child support which he agreed to in the stipulation, it is settled that a court has continuing jurisdiction to modify child support even if the amount is set by stipulation. *Spilovoy v. Spilovoy,* 488 N.W.2d 873 (N.D.1992); *Puklich v. Puklich,* 463 N.W.2d 651 (N.D.1990); *McDonough v. McDonough,* 458 N.W.2d 344 (N.D.Ct.App. 1990); *Tiokasin v. Haas,* 370 N.W.2d 559 (N.D.1985); *Malaterre v. Malaterre,* 293 N.W.2d 139 (N.D.1980); *see also Ebertz v. Ebertz,* 338 N.W.2d 651 (N.D.1983) [stipulation not binding as pertaining to child custody]. We take a dim view of agreements purporting to sign away the rights of a child in support settings—not from a contractual background, but from a public policy one. *McDonough, supra; Tiokasin, supra.*

Bradley contends that section 14–17–17, NDCC,[1] of North Dakota's adaptation of the Uniform Parentage Act—the provision

---

1. Section 14–17–17, NDCC, states:
   "Modification of judgment or order. The court has continuing jurisdiction to modify or revoke a judgment or order:
   1. For future education and support; and
   2. With respect to matters listed in subsections 3 and 4 of section 14–17–14 and subsec-

tion 2 of section 14–17–16, except that a court entering a judgment or order for the payment of a lump sum or the purchase of an annuity under subsection 4 of section 14–17–14 may specify that the judgment or order may not be modified or revoked."

allowing modification of child support orders—applies only to paternity actions that are formally tried and in which the court finds a duty to support. Bradley admitted paternity in a compromised settlement agreement which was stipulated to and which the court used as the basis for its original judgment. Because the case was not formally tried, Bradley contends that the court lacked jurisdiction to modify the support judgment.

We find nothing in the express wording of section 14–17–17, NDCC, which requires a formal determination of paternity in order that the judgment be determinative for all purposes, nor do we find any justification for an implication of formality. Since we have a policy to encourage settlements and to discourage litigation, *Hastings Pork v. Johanneson*, 335 N.W.2d 802 (N.D.1983), requiring, as Bradley suggests, a formal proceeding as the basis of all judgments and orders would be contrary to this policy. To infer that "judgment or order" as used in the statute requires a formal determination would make stipulations and compromise agreements not only toothless, but irrelevant.

We recognize the logic of Bradley's argument that he stipulated to paternity because the stipulation correspondingly limited his financial obligation for child support and that once the limitation on his financial obligation is removed he should, in fairness, equity and application of principles of contract law, be freed from his admission to paternity. Those views are encompassed in a dissenting opinion in *Gerhardt v. Estate of Moore*, 150 Wis.2d 563, 441 N.W.2d 734 (1989). The rationale in the dissent is distinguishable from this case. In *Gerhardt*, the putative father made a lump-sum payment, relying on a provision in Wisconsin law similar to section 14–17–17, NDCC, which provides that a judgment for payment of a lump sum or purchase of an annuity may specify that the judgment may not be modified or revoked. This statute was later found unconstitutional[2] but the majority opinion refused to disturb the

admission of paternity, notwithstanding the fact child support would be increased.

Here, Bradley did not rely on a specific statute. Section 14–17–17(2), NDCC, lists two circumstances under which a court cannot modify a support obligation, i.e., where the putative father makes a lump-sum payment or purchases an annuity. By forbidding modification in the instance where the judgment provides for lump-sum payment or purchase of an annuity, the statute necessarily envisions modification of all other awards, including those previously stipulated. It is a general principle of statutory interpretation that the mention of one thing implies the exclusion of the other. *See, e.g., In Re Township 143 North, Range 55 West, Cass County*, 183 N.W.2d 520 (N.D. 1971). Unlike the father (Moore) in *Gerhardt*, Bradley could not have relied on this section for his position that the support judgment could not be modified.

Finally, unlike *Gerhardt* in which no blood tests were apparently taken, here blood tests were taken which indicated Bradley was the likely father. Although the stipulation avoided a contested trial of the issue of Bradley's parenthood, we are aware that the blood test results may have been part of the reason Bradley entered into the stipulation.

Bradley also argues that a decision to permit modification of the support payments in the stipulated settlement, but at the same time deny the putative father the right to contest paternity, will discourage the settlement of law suits. We agree that settlement of disputes should be encouraged whenever possible and that the judicial process should be conducted to accomplish this purpose. *Aaker v. Aaker*, 338 N.W.2d 645 (N.D.1983). We do not intend to depart from that general principle. But, as the Wisconsin court in *Gerhardt* observed in striking down the statute which prohibited modifications of judgments which ordered lump-sum payments or the

2. The constitutionality of this provision is not before us. *See Gerhardt v. Estate of Moore*, 150 Wis.2d 563, 441 N.W.2d 734 (1989).

purchase of an annuity to encourage settlement of paternity cases:

"We are unpersuaded that the statutory scheme is substantially related to its asserted state interests. To begin with, it is difficult to see how the interest in promoting settlements justifies a total waiver of future child support regardless of the child's future needs or the father's ability to pay. As a practical matter, when an admission of paternity was obtained in the manner presented here, the benefits to the child were often so minimal that the admission of paternity had almost no value to anyone except to the county which had its medical costs covered. Somewhat ironically, while the child lost all right to require the father to provide additional support, the unmarried father's rights remained fully protected after such an agreement. Presumably, the father could subsequently assert visitation and even seek support from the mother who waived future child support in exchange for an admission of paternity.

Furthermore, the risk of losing the paternity issue at trial and burdening the state's welfare system is undercut by the countervailing state interest in the continued adequacy of support for the child. Contrary to the estate's perception, denying nonmarital children the ability to obtain additional child support from their fathers regardless of future circumstances could itself result in an increased burden on the state welfare system. Similarly, the interest in finality is undercut by the fact that Krueger would not be barred from seeking additional support had the State and her mother never brought the original suit, or if the settlement and judgment in that suit had provided for periodic payments rather than a lump-sum. The elimination of the statutory bar in 1981 also suggests that the interest in finality was viewed as less than overwhelming by the legislature."

*Gerhardt, supra,* at 738–739.

Due to the nature of domestic relations, we do not analyze transactions and compromises between the parties in a cold contractual frame—public policy plays a large role in determining the factors of which parties may contract in domestic relations settings. For instance, in discussing the statutory predecessor of the Uniform Parentage Act, this Court observed that the object of a paternity proceeding was not to punish the father, but to ensure a provision for the maintenance and education of the child. *State v. Southall,* 50 N.D. 723, 197 N.W. 866 (N.D.1924). The prefatory note to the Uniform Parentage Act likewise observes that "in providing substantive legal equality for all children regardless of the marital status of their parents, ... this Act will fulfill an important social need in terms of improving the states' systems of support enforcement." *Uniform Parentage Act* Prefatory Note, 9B U.L.A. 289 (1973).

Section 14–17–14, NDCC, states that "[t]he judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for *all* purposes." [Emphasis added]. The need for finality of paternity dispositions is evident. This need for finality is not advanced were we, as Bradley urges, to find another exception to the plain wording of section 14–17–17, NDCC, which would negate a declaration of paternity in order to forbid a support modification.

We determine that the trial court did not err in concluding it had jurisdiction to modify a child support award established on the basis of a compromised settlement.

### Applying the Child Support Guidelines

Our child support statutes set forth a strong public policy requiring the courts to assure the proper support and maintenance of minor children. *Guthmiller v. Guthmiller,* 448 N.W.2d 643 (N.D.1989). Courts that have the power to award child support also have the power to modify it whenever circumstances have changed materially. *Clutter, supra; Sweeney supra.* A majority of this court has held that a disparity from the published guidelines for setting support has not eliminated the need for a material change in circumstances to authorize a court to adjust support. *Clutter, supra; State ex rel. Younger v.*

*Bryant,* 465 N.W.2d 155 (N.D.1991).[3] However, a finding of significantly changed income for the obligor may be material enough to allow adjustment of child support. *Clutter, supra.*

At the time of the 1986 paternity action, Bradley admitted that his monthly income for the purposes of determining an appropriate child support amount was $1,190. In response to Karen's 1991 action for modification of child support, Bradley admitted that his monthly take-home pay was $1,700. If, at the trial level, Bradley objected to this amount being used to determine child support, there is no evidence of it in the record. There is nothing in his brief in response to Karen's motion to amend that would give the trial court a different indication of Bradley's available income, nor do we have the hearing transcript before us to determine if Bradley contested this amount.

In his Brief For Appellant to our Court, Bradley contends that deductions exist which would decrease his monthly net income to $1,640. He makes the assertion that deductions are available which the trial court did not consider; however, he does not provide us a breakdown of what these deductions are or provide a basis for which we could determine them for ourselves. As Bradley has the burden of proof in this matter, a simple assertion of error or possibility of a different outcome without an explanation or justification of the assertion will not be convincing. Bradley has failed to leave us with a definite and firm conviction that a mistake has been made with respect to the computation of his net income.

Bradley also contends the guidelines should be modified to take into consideration unordered child support obligations in that they discriminate against obligors who have a child for which support is not ordered by the court. Since the 1986 paternity action, Bradley has married and had a child; thereby, Bradley asserts that he should be allowed a deduction from income

based on the fact that he is supporting that child.

Bradley asserts that *Bergman v. Bergman,* 486 N.W.2d 243 (N.D.1992) is applicable to his case. In *Bergman,* we questioned the application of the child support guidelines to an obligor who was ordered to provide child support to two separate households other than his own, and held that the guidelines do not provide a presumptively correct amount of support in these cases. We gave trial courts instructions that the support obligations presumably exceeded the guidelines in these instances and the trial courts should factor into its equation the principle that proportionately less funds are required for each succeeding child in a single household. We specifically limited our inquiry to instances where an obligor had more than one ordered child support obligation and all children were before the court. We were careful not to imply a change in law or to imply that the *Bergman* rationale would be applicable to other instances like Bradley's by specifically stating that "child support guidelines do not provide adequate guidance when multiple families appear *simultaneously* before the trial court." *Id.* at 247 [emphasis added]. *Bergman* is not applicable to this case.

We find the answer to the question in this case in the child support guidelines. Section 75–02–04.1–02(3), NDAC, states that "[n]et income received by an obligor from all sources must be considered in the determination of available money for child support"—it allows for no deductions based upon unordered child support. Section 75–02–04.1–02(1), NDAC, states that "[c]alculations of child support obligations provided for under this chapter consider and *assume* that *one* parent acts as a primary caregiver and the *other* parent contributes a payment of child support to the child's care." [Emphasis added]. By inference, the guidelines do not envision deductions made from the obligor's income for unordered child support.

3. Effective October 1, 1993, a material change in circumstances will no longer be required for court-ordered child support modifications. *See* NDCC § 14–09–08.4 Note.

Our child support statutes create a rebuttable presumption that "the amount of child support which would result from the application of the child support guidelines is the correct amount of child support." NDCC § 14–09–09.7(3). It is presumed that a noncustodial parent owes the specified amount of support to the child.

Our review of a trial court's determination regarding child support is governed by Rule 52(a), NDRCivP. We will not set aside a trial court's determination unless, after reviewing the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Sweeney, supra.*

We conclude that the court did not err in modifying the child support award and we affirm the judgment as amended.

ERICKSTAD, C.J., and MESCHKE, LEVINE and JOHNSON, JJ., concur.