**Chester HOUMANN, Plaintiff and Appellee,**

v.

**Colleen HOUMANN, Defendant and Appellant.**

**Civ. No. 920328.**

Supreme Court of North Dakota.

April 27, 1993.

**594**

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellee; argued by Donald L. Peterson.

Thomas Law Firm, Minot, for defendant and appellant; argued by Robert S. Thomas.

NEUMANN, Justice.

Colleen Houmann appealed from a district court order modifying child support. We reverse and remand for a redetermination of child support in accordance with the Department of Human Services child support guidelines.

Colleen and her former husband, Chester Houmann, were divorced in April 1981. The original divorce decree awarded Colleen custody of their two children, Trenton, born May 6, 1977, and Tanner, born November 27, 1978, and ordered Chester to pay Colleen a total of $300 per month for child support.

On April 6, 1992, Colleen filed a motion to increase Chester's child support obligation. After an evidentiary hearing, the trial court found a material change in circumstances, based on a substantial increase in Chester's average net income, and increased Chester's child support payments to $449 per month. Colleen then filed this appeal, asserting that the trial court did not correctly compute the amount of support that Chester should now be paying in accordance with the guidelines. We agree.

The child support statutes set forth a strong public policy requiring the courts to assure that minor children receive proper support and maintenance. *Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D.1989). Section 14–09–09.7(3), N.D.C.C., creates a rebuttable presumption that the amount of child support resulting from application of the child support guidelines is the correct amount of child support. In this case the trial court incorrectly calculated the amount of child support under the guidelines.

Section 75–02–04.1–05(2), of the North Dakota Administrative Code (N.D.A.C.), specifically provides that business expenses not requiring actual expenditures are to be included as part of an obligor's net income from self-employment for purposes of calculating child support:

"2. After adjusted gross income from self-employment is determined, all business expenses which may be allowed for taxation purposes, but which do not require actual expenditures, such as depreciation and net operating losses, must be added to determine net income from self-employment...."

Chester is a self-employed farmer. In calculating Chester's net income the trial court averaged Chester's income for the three-year period of 1989 through 1991. The tax returns for those years show that Chester has deducted considerable amounts of depreciation from his gross income for purposes of determining his taxable income. The trial court should have included Chester's depreciation, and other business expenses not requiring actual expenditures, as part of Chester's net income for purposes of computing Chester's child support obligation under the guidelines. It was error for the court to fail to do so.

Section 75–02–04.1–02(3), N.D.A.C., provides that "net income received by an obligor from all sources must be considered in the determination of available money for child support." Chester's tax returns show that in 1991 he actually received crop insurance proceeds of $55,276, but for income tax purposes he deferred reporting that amount to future years. The computation of net income in the guidelines begins with total gross income, and gross income as defined in the guidelines specifically includes deferred income. Section 75–02–04.1–01(2), N.D.A.C. Thus, it was error for the trial court to exclude the crop insurance proceeds received by Chester in 1991, in determining Chester's net income for child support purposes.[1]

---

1. The guidelines recognize that self-employment income often fluctuates, and directs that "infor-

Subsequent to Chester and Colleen's divorce, Chester remarried. He has two children of that marriage, who are currently residing with him. In calculating Chester's child support obligation to Colleen for Trenton and Tanner, the trial court considered the living costs to Chester for the children of his current marriage. The court determined the amount of support Chester would owe for four children under the guidelines schedule, Section 75–02–04.1–10, N.D.A.C., and then divided that amount in half, resulting in a $449 per month support obligation by Chester for Trenton and Tanner.

We agree with Colleen that the court erred in considering Chester's children from his second marriage when it applied the guideline schedule for calculating Chester's child support obligation for Trenton and Tanner. The guidelines do not allow "unordered child support obligations" to be considered in determining a noncustodial parent's support obligation for children residing with the custodial parent. *State of Minnesota v. Snell*, 493 N.W.2d 656, 660 (N.D.1992). The presumptively correct child support for Trenton and Tanner under the guidelines is the amount listed under Section 75–02–04.1–10, N.D.A.C., for two children of an obligor with Chester's monthly net income.

Pursuant to Section 14–09–09.7(3), N.D.C.C., the presumptively correct amount of child support under the guidelines schedule can be rebutted:

" ... if a preponderance of the evidence in a contested matter establishes that factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought. A written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted."

The trial court did not make a specific finding that it would create an undue hardship to require Chester to pay the amount of support required by the guidelines. Furthermore, the guidelines expressly take into consideration "[t]he subsistence needs, work expenses, and daily living expenses of the obligor." Section 75–02–04.1–09(1)(a), N.D.A.C. Consequently, the additional living expenses assumed by an obligor who voluntarily remarries and has children from that marriage do not constitute "factors not considered by the guidelines" to justify a finding of undue hardship under Section 14–09–09.7(3), N.D.C.C.

In its order modifying Chester's support obligation, the trial court provided for increased support payments as of May 1992. We believe that is an appropriate date for the court to commence the modified support obligation, and the court should make the modified support payments, as calculated on remand, effective May 1992.

We reverse and remand to the trial court for purposes of recalculating Chester's child support obligation under the guidelines, in accordance with this opinion.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.

---

mation reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations" should be used. Section 75–02–04.1–02(7), N.D.A.C. Self-employment factors are given special attention. *See* Section 75–02–04.1–05, N.D.A.C. Specifically, "[f]arm businesses experience significant changes in production and income over time." *Id.* at subsection 3. "To the extent that information is reasonably available, the average of the most recent five years of farm operations," rather than the three years used here, "should be used to determine farm income." *Id.*

If a five-year average is used on remand, it should average the effect of the $55,276 item of crop insurance proceeds over a longer period,

and thereby reduce the "bulge" effect on the obligor's income. Also, note that some "[b]usiness costs which are actually incurred and paid, but which may not be expensed for internal revenue service purposes, such as principal payments on business loans, may be deducted to determine net income from self-employment." Section 75–02–04.1–05(2), N.D.A.C. Alternatively or additionally, as the case may be, certain land costs of a farmer, such as the lesser of the "fair rental value of ... land being purchased" or "total principal and interest payments actually made toward the purchase of the land," may be taken into account in averaging farm self-employment income. Section 75–02–04.1–05(4), N.D.A.C.