**L.J. BERNHARDT, Director of Stark County Social Service Board, as Guardian Ad Litem of the minor child, M.E.W., DOB: 01–02–86, Petitioner,**

and

**H.J.W., Petitioner and Appellant,**

v.

**K.R.S., Respondent and Appellee.**

Civ. No. 930004.

Supreme Court of North Dakota.

July 14, 1993.

Dwight C.H. Kautzmann of Bair, Brown & Kautzmann, Mandan, for petitioner and appellant.

Ronald A. Reichert of Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for respondent and appellee.

VANDE WALLE, Chief Justice.

Bev,[1] mother of a minor child, appealed from an amended judgment modifying child support. We reverse and remand for a redetermination of child support in accordance with the Department of Human Services Child Support Guidelines.

In 1986, a paternity action was commenced by Bev, which alleged that Mark was the father of Bev's daughter, Alicia, born that year. Mark contested the paternity. After blood tests were taken which indicated a very high probability that Mark was the father of Alicia, Mark agreed to drop his opposition to paternity in exchange for a reduced amount of child support. At hearing, Mark and Bev entered into an oral stipulation relative to the determination of the issues of paternity, custody, and support of Alicia.[2] The court found that Mark was the father of Alicia, ordered that Bev would have the care, custody, and control of Alicia, and, notwithstanding that the original guidelines in existence at that time[3] called for a child-support payment of $475.00 per month from an obligor in Mark's position, ordered Mark to pay $200.00 per month in accordance with the orally-stipulated agreement.

In 1992, Bev moved the trial court to modify its order for child support to require Mark to pay increased child support, to pay 50% of Alicia's medical bills and medical insurance, to carry life insurance sufficient to take care of Alicia's needs, and to find that Alicia is a child with special needs who is developmentally delayed as a result of physical impairments that existed at the time of birth.

After the hearing, the trial court increased Alicia's child support from $200 to $300 per month.[4] Mark had an annual

1. The names of all persons referred to in this opinion are pseudonyms.

2. The stipulated agreement is not in the record, but both parties agree that there was one, and the existence of the stipulation was acknowledged in the amended findings and order of the trial court.

3. The legislation authorizing the guidelines in effect at the time of the stipulation did not create a rebuttable presumption but only required the court to "consider the scale of suggested minimum contributions in making a determination of the amount of payment for child support." 1983 N.D. Laws Ch. 181 § 1(3).

4. The court heard arguments from both Bev and Mark, and issued an amended findings and order which found:

income of $34,000 per year, and $300 in child support is below the established child-support guidelines as promulgated by the Department of Human Services. NDAC § 75–02–04.1–10. On appeal, Bev contends that the trial court erred in awarding an amount which varied significantly from the established child-support guidelines without adequate explanation.

In *Minnesota v. Snell*, 493 N.W.2d 656 (N.D.1992), we determined that a child-support award which is based upon a stipulation wherein an alleged father agreed to drop a contest of paternity in exchange for a child-support obligation less than that contained in the child-support guidelines in Chapter 75–02–04.1, NDAC, was subject to modification in a subsequent proceeding if the usual prerequisites for modification are met. *See* Chapters 14–09, 14–17, NDCC. *See also Reimer v. Reimer*, 502 N.W.2d 231 (N.D.1993); *Rueckert v. Rueckert*, 499 N.W.2d 863 (N.D.1993); *Clutter v. McIntosh*, 484 N.W.2d 846 (N.D.1992); *Sweeney v. Hoff*, 478 N.W.2d 9 (N.D.1991).

■ The initial child-support award was based upon a stipulated agreement between Bev and Mark wherein Mark agreed to drop his contest to paternity in exchange for reduced child-support payments. Nevertheless, *Minnesota v. Snell* holds that a court has continuing jurisdiction to modify such an award.

■ Our child support statutes set forth a strong public policy requiring the

"1. The minor child of the parties, [Alicia], is developmentally delayed and is handicapped having a Dandy–Walker cyst on her cerebellum and has abnormal chromosomes. The Judgment should be amended to reflect this finding.
2. That portion of the motion requesting [Mark] to carry term life insurance sufficient to take care of the child's needs in the future as security should he die is denied.
3. The Court finds that it is in the best interest of the child that [Mark] pay 50 percent of the medical insurance premium in the amount of $22.50.... The Court further finds, however, that requiring [Mark] to pay 50 percent of all medical bills not covered by insurance could be catastrophic to him and result in bankruptcy, and therefore, that portion of the motion is denied.

court to assure the proper support and maintenance of minor children. *Rueckert, supra; Snell, supra; Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D.1989). Section 14–09–09.7(3), NDCC, creates a rebuttable presumption that the amount of child support resulting from the application of the child-support guidelines is the correct amount of child support. *Houmann v. Houmann*, 499 N.W.2d 593 (N.D.1993). A court may depart from the established guidelines upon a showing of undue hardship for the obligor:

"There is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines is the correct amount of child support. The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes that factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought. A written finding or a specific finding on the record must be made if the court determines that the presumption had been rebutted."

NDCC § 14–09–09.7(3); *see* NDAC § 75–02–04.1–06. Thus, the presumptive obligation under the guidelines can be rebutted only if a preponderance of the evidence establishes the existence of "factors not considered by the guidelines" as set forth in section 75–02–04.1–09, NDAC, or the existence of a hardship as set forth in section 75–02–04.1–06, NDAC.

4. The Court finds that there has been a material change in circumstances since the settlement of this case and the great weight of the evidence shows that. Further, the Court finds that a fair amount of child support for this child is $300 per month....
5. The Court finds that [Bev] is entitled to attorney fees....
6. That all parties hereto originally entered into a stipulated agreement whereby [Mark] waived his right to contest paternity and [Bev] accepted the reduced child support given the Child Support Guidelines that were applicable at the time of the paternity action.
7. That the application of the Guidelines to the facts as presented would interfere with contractual obligations and would create a hardship for [Mark] in that the presumption that the Guidelines support amount is appropriate is rebutted in this case."

**236**

Trial court findings that the presumption has been rebutted are subject to the "clearly erroneous" standard of review. Rule 52(a), N.D.R.Civ.P.; *Guskjolen v. Guskjolen,* 499 N.W.2d 126 (N.D.1993). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm impression that a mistake has been made. *Id.*

There is some indication that the trial court took into consideration Mark's business losses and the expenses associated with his new family. The guidelines expressly take into consideration "[t]he subsistence needs, work expenses, and daily living expenses of the obligor...." NDAC § 75–02–04.1–09(1)(a). Consequently, the work expenses of the obligor, and the additional living expenses assumed by an obligor who voluntarily remarries and has children from that marriage, do not constitute "factors not considered by the guidelines" to justify a finding of undue hardship under section 14–09–09.7(3), NDCC. NDAC §§ 75–02–04.1–05, 06; *Houmann, supra; Snell, supra.* Business expenses, including business losses, resulting from self-employment are to be given consideration in accordance with section 75–02–04.1–05, NDAC.

The trial court did not specifically define the undue hardship that would result from the presumptive obligation. We will not assume that hardship necessarily arises when the presumptive obligation is greater than the amount of support set forth in a prior-stipulated agreement. *Minnesota v. Snell, supra.* Although an obligor may be required to pay more than the stipulated amount, that fact is not alone sufficient to create the hardship contemplated by the statutes and administrative code.

The trial court stated that the application of the guidelines would create a hardship for Mark, but failed to state what the hardship would be and why a departure from the guidelines is needed. Without a finding of situations of hardship pursuant to sections 75–02–04.1–06, or 75–02–04.1–09, NDAC, a conclusory finding that the presumptive obligation has been rebutted is insufficient.

The court's findings must be specific as to its reason for departing from the guidelines. NDCC § 14–09–09.7(3); *Spilovoy v. Spilovoy,* 488 N.W.2d 873 (N.D. 1992). A trial court's findings of fact must adequately explain the basis for its decision. *Tuff v. Tuff,* 333 N.W.2d 421 (N.D. 1983).

Because there are no specific findings to rebut the presumptive child-support obligation and thus justify a present departure from the guidelines, we conclude that the trial court's child-support award is clearly erroneous and that the court must redetermine Mark's child-support obligation.

We reverse and remand to the trial court for further proceedings in accordance with this opinion.

SANDSTROM, MESCHKE, NEUMANN and LEVINE, JJ., concur.