Vicky HALLOCK, (f/k/a Vicky L. Mickels), Plaintiff and Appellee,

v.

Sven MICKELS, Defendant and Appellant.

Civ. No. 930122.

Supreme Court of North Dakota.

Oct. 26, 1993.

Timothy W. McCann (argued), S. Legal Officer, appearing under the Temporary Practice Rule, Grand Forks Regional Child Support Unit, Grand Forks, for plaintiff and appellee. Appearance by James T. Odegard, State's Atty.

Sven E. Mickels, pro se.

MESCHKE, Justice.

Sven Mickels appeals from an order modifying his child support obligation. We affirm the increase in child support, but direct a remand for reconsideration of related changes in the amended divorce decree.

During their marriage, Sven Mickels and Vicky Hallock had one child, Jennifer. When they divorced in 1980, the stipulated decree awarded primary custody of Jennifer to Vicky, ordered Sven to carry medical insurance on Jennifer, and directed him to pay Vicky $200 per month in child support. In 1992, Vicky assigned her claim to the Grand Forks Regional Child Support Enforcement Unit, which moved to increase child support.

After an agreed change of venue from Pembina County to Grand Forks County, the trial court found a material change in Sven's circumstances since 1980 in the doubling of his net monthly income to over $2,500. The court increased Sven's support obligation to $500 per month, amended the clause on medical coverage for Jennifer, lengthened the duration of support, and required income withholding and payment by a guaranteed instrument. The court also refused to hear Sven's claim that Jennifer was being abused while living in Vicky's household.

I.

Appealing without the assistance of counsel, Sven argues that the agreed-upon support should not have been modified. He further argues that, even if an increase was proper, the $500 amount was not mandated by the guidelines and imposes a hardship on him.

After a divorce, the court retains continuing jurisdiction to modify periodic child support. *Bernhardt v. K.R.S.,* 503 N.W.2d 233, 235 (N.D.1993). A trial court's modification of support is a finding of fact. *Rueckert v. Rueckert,* 499 N.W.2d 863, 868 (N.D.1993). Our review is governed by the clearly erroneous standard of NDRCivP 52(a). *Guskjolen v. Guskjolen,* 499 N.W.2d 126, 128 (N.D.1993). As we said in *Guskjolen,* we will reverse only if, after viewing the entire record, we are left with a definite and firm conviction that a mistake has been made.

Unless made unnecessary by statute, *see* NDCC 14–09–08.4 and the Note with it, a material change in circumstances will warrant a modification in the amount of child support owed by the non-custodial parent. *State of Minnesota v. Snell,* 493 N.W.2d 656, 659–60 (N.D.1992). Usually, a substantial change in financial circumstances of one parent warrants a modification. *Spilovoy v. Spilovoy,* 488 N.W.2d 873, 876 (N.D.1992). Here, Sven's income more than doubled since he was first ordered to pay support. Smaller increases in income have been viewed as material changes. *State of Minnesota v. Snell* at 660; *State ex rel. Younger v. Bryant,* 465 N.W.2d 155, 160 (N.D.1991); *Illies v. Illies,* 462 N.W.2d 878, 881 (N.D.1990). We affirm this decision increasing child support because a material change occurred.

Sven argues that the increase from $200 to $500 in monthly child support was excessive. NDCC 14–09–09.7(3) creates "a rebuttable presumption that the amount of child support that would result from the application of the child support guidelines is the correct amount of child support." *See Bernhardt,* 503 N.W.2d at 235; *Reimer v. Reimer,* 502 N.W.2d 231, 233 (N.D.1993); *Rueckert,* 499 N.W.2d at 869; *Houmann v. Houmann,* 499 N.W.2d 593, 594 (N.D.1993). Under NDAC 75–02–04.1–10, the guidelines set the presumptive amount of support by using the net monthly income of the non-custodial parent, who is the obligor.

■ An obligor's net income is computed by subtracting deductions listed in NDAC 75–02–04.1–01(4) from his gross income.[1] Sven's annual gross income was $42,746. After subtracting allowed deductions, the trial court held that his net monthly income was $2,536. Under NDAC 75–02–04.1–10, the presumptive amount of child support for an obligor with a monthly net income (rounded to the nearest $100) of $2,500 is $492 monthly for one child. The trial court permissibly rounded that to $500 monthly.

Sven argues that his monthly net income is $803, instead of $2,536, after allowable deductions. However, his calculations are mistaken. Sven would deduct the actual amount of taxes that he designated to be withheld from his wages, rather than the amount from application of standard deductions and tax tables. Sven would deduct the cost of his family's health insurance, besides Jennifer's. These additional deductions are not authorized by NDAC 75–02–04.1–01(4), and do not change Sven's net income for reckoning child support.

Sven would deduct all of his retirement contributions, including the discretionary part. We understand that his discretionary contributions are a difficult choice for Sven. If he does not contribute fully, he will also lose the retirement benefit of a large matching contribution from his employer. Still, Sven can withhold the discretionary part if he chooses. While not entirely without compulsion, his discretionary contributions are not deductible. Under the plain meaning of NDAC 75–02–04.1–01(4)(g), discretionary retirement contributions are not required as a condition of employment.

We conclude that the trial court correctly computed Sven's net income and the presumptive amount of support.

■ The presumptive support set by the guidelines can be rebutted by showing hardship. NDCC 14–09–09.7(3). Hardship means:

> Situations … over which the obligor has little or no control, and which may substantially reduce the ability to pay child support for a prolonged time. If a continued or fixed expense, other than the obligor's living expenses, is actually incurred and paid, … the amounts paid may be deducted from gross income to arrive at net income.

NDAC 75–02–04.1–06. The controllable living expenses of the obligor and his household are not hardships.

■ Sven claimed hardships from medical bills, home mortgage payments, credit card bills, and other household expenses. However, the trial court properly ruled that these items were "subsistence needs, work expenses, and daily living expenses" already considered by the guidelines and not deductible. NDAC 75–02–04.1–09(1)(a); *Guskjolen,* 499 N.W.2d at 128. Sven also claimed support of his three stepchildren, living in his home and attending college, warranted a hardship reduction. Although Sven may be bound by NDCC 14–09–09 to support stepchildren received into his family, their care and tuition would not qualify as a hardship even if they were his natural children. As we held in *Rueckert,* 499 N.W.2d at 870, support of children in a second family is considered by the guidelines and, unless court ordered and deductible under NDAC

---

1. NDAC 75–02–04.1–01(4) says:
   "Net income" means total gross monthly income less:
   a. Federal income tax obligation based on application of standard deductions and tax tables.
   b. State income tax obligation based on application of standard deductions and tax tables.
   c. Federal Insurance Contributions Act (FICA) deductions or obligations, whichever is less.
   d. That portion of premium payments for health insurance policies or health service contracts intended to afford coverage for the child or children for whom support is being sought, and payments made on actual medical expenses of the child or children for whom support is being sought.
   e. Payments actually made pursuant to a child support order, issued by a court or other governmental agency with authority to issue such orders, with respect to a child for whom support is not being sought in the proceeding before the court.
   . . . .
   g. Employee retirement contributions, other than FICA, where required as a condition of employment.
   . . . .

75–02–04.1–01(4)(e), does not authorize a reduction in the presumptive support.

All the hardship factors listed by Sven are considered in the guidelines. Although the increased support may strain Sven's current budget, no hardship warrants departure from the guidelines. This increase of child support to $500 monthly is not clearly erroneous.

## II.

The trial court refused to hear evidence about possible child abuse of Jennifer while living in Vicky's household. In his response and at the hearing, Sven attempted to argue that Jennifer was being abused, although it is unclear what relief he expected.

Sven showed that in June 1991 Jennifer had been committed by Minnesota officials to the Archdeacon Gilfillan Center in Bemidji. However, a Minnesota court discharged Jennifer in November 1991 for lack of jurisdiction because she was only a temporary resident in Minnesota. Before Jennifer was released, her treating therapist reported that Jennifer had serious emotional and psychological problems and was probably in need of protective services. Evidently, the recommendations of this report were not acted on by any social service agency in North Dakota, her state of residence.

Neither this court nor the trial court should be unconcerned about child abuse, but there are different procedures for protecting an abused child. A child protection team in the Department of Human Services has a duty to investigate reports of suspected child abuse, to report it to the juvenile court if probable cause is found, and to furnish protective services. NDCC 50–25.1–04, –04.1, –05, –05.1, –05.2, and –06. Upon complaint, the juvenile court must act upon an allegation of child abuse. NDCC 27–20–02(5), –06, and –30. But evidence of child abuse is not relevant in a support hearing. A person acting as his own attorney, as Sven was, is equally bound by the rules of procedure, even if he lacks understanding of the correct procedures. *Vinje v. Sabot*, 477 N.W.2d 198, 199 (N.D.1991). Since Sven had not moved for a change in custody, the question of child abuse was not a subject for the trial court to consider in this support case.

## III.

There are clear conflicts between the trial court's order to amend the decree and the amended decree entered by the clerk. Where such a conflict exists, the decree controls until a party gets it amended or corrected under NDRCivP 60. *Village West Associates v. Boeder*, 488 N.W.2d 376, 379 (N.D.1992). This should not encourage a successful party to prepare a creative judgment because the judgment must conform to the trial court's order for judgment. NDRCivP 58; *Village West* at 379. Deliberate changes, not expressly approved by the court, are grounds for discipline or sanctions. NDRPC 3.4(c) ("A lawyer shall not . . . (c) Knowingly disobey an obligation under the rules of a tribunal. . . .").

Sven did not move for correction of this amended decree, as entered, in the trial court. However, by his original response to the Unit's motion, he had contested each change carried into the amended decree. Several of those amendments are not supported by essential findings, a shortcoming that most departures from an order for judgment will have.

A court's findings of fact must adequately explain the decision. *Bernhardt*, 503 N.W.2d at 236, *citing Tuff v. Tuff*, 333 N.W.2d 421 (N.D.1983); *Spilovoy*, 488 N.W.2d at 877. Because the trial court's findings do not support those parts of this amended decree, we direct on remand that the court reconsider, in the light of this opinion, those parts that change the duration of child support and the health insurance obligation, and that impose income withholding and a guaranteed form of payment.

### A.

Sven objects to the extension of his child support obligation. The original decree required Sven to pay child support until Jennifer becomes 18 years old. The trial court correctly ordered that child support for Jennifer be extended beyond age 18 to whenever she graduates from high school or turns 19,

whichever comes first, so long as she attends high school and lives with Vicky. However, in contrast to the trial court's order, the amended decree extends Sven's obligation to when Jennifer "reaches the age of 19 years or graduates from high school, whichever occurs first," without the conditions that she attend high school and live with Vicky. The trial court's order conforms to NDCC 14–09–08.2(1),[2] but the amended decree does not.

We have previously held that this type of extension is proper and does not require a change in circumstances. *Garbe v. Garbe,* 467 N.W.2d 740, 743 (N.D.1991). However, in *Garbe,* we reversed an amended decree that failed to impose the necessary conditions. As in *Garbe,* this amended decree fails to condition any payment made after Jennifer turns 18 on her attending high school and continuing to reside with Vicky. The controlling statute requires these conditions in the decree.

### B.

■ Sven objects to the change in the amended decree on health insurance for Jennifer. Sven has continuously carried health insurance on Jennifer as ordered in the original decree. The Unit moved to amend to describe medical, hospital and dental coverage, to require Sven to notify the Unit about obtaining that insurance, and to add the elaborate language of NDCC 14–09–08.10 on insurance at no or nominal cost.

The trial court's decision simply directed insertion of the "health insurance" language of NDCC 14–09–08.10.[3] However, the origi-

nal decree already required Sven to carry health insurance on Jennifer, whether or not available at "no or nominal cost," so the change had no apparent purpose. Moreover, the amended decree prepared by the Unit and entered by the clerk did not track the statute. Instead of inserting the "health insurance" language ordered by the court, the amended decree incorporates the language of the Unit's motion to amend, describing "medical, dental and hospital insurance," a phrasing different than the statute and the trial court's order.

While the trial court may order health coverage or payment of medical expenses for a supported child, it is difficult to understand why a change was sought or made in this case. Moreover, nowhere in the court's decision is there any support for the direction that Sven provide dental insurance for Jennifer. While the trial court may order Sven to carry dental insurance for Jennifer if needed, these findings of fact do not explain why that should be done in this case.

### C.

Sven objects to the income withholding ordered by the amended decree. Since he has continuously and timely paid his support for Jennifer for over twelve years, Sven claims that good cause exists to waive income withholding. The statute directs income withholding in child support enforcement "regardless of whether the obligor's support payments are delinquent." NDCC 14–09–09.24(1).[4] However, the statute also says

---

2. NDCC 14–09–08.2(1) says:

   A judgment or order requiring the payment of child support until the child attains majority continues as to the child until the end of the month during which the child is graduated from high school or attains the age of nineteen years, whichever occurs first, if:
   a. The child is enrolled and attending high school and is eighteen years of age prior to the date the child is expected to be graduated; and
   b. The child resides with the person to whom the duty of support is owed.

3. NDCC 14–09–08.10 says:
   1. Unless the obligee has comparable or better group dependent health insurance coverage available at no or nominal cost, the court shall order the obligor to name the minor child as beneficiary on any health insurance plan that

is available to the obligor at no or nominal cost.
   2. If the court finds that dependent health insurance is not available to the obligor or the obligee at no or nominal cost, the court may require the obligor to obtain dependent health insurance, or to be liable for reasonable and necessary medical expenses of the child.

4. NDCC 14–09–09.24 says:

   *Immediate income withholding.*
   1. Except as provided in subsection 2, each judgment or order which requires the payment of child support, issued or modified on or after January 1, 1990, subjects the income of the obligor to income withholding, regardless of whether the obligor's support payments are delinquent.

that "the court need not subject the income of the obligor to immediate withholding" if the obligor demonstrates and the court finds that there is good cause. *Id.* at subsection 2. *Compare* NDCC 14–09–09.13 (procedure for issuing income withholding order "[i]f immediate income withholding under section 14–09–09.24 has not been implemented and an obligor is delinquent" or "if a court changes its finding that there is good cause not to require immediate income withholding").

■ The Unit argues that Sven must "provide a written determination" that it would be in Jennifer's best interests to not order income withholding to establish good cause. However, this awkward argument ignores the plain meaning of NDCC 14–09–09.24(3)(a). In this context, "determination" means "the decision of a *court.*" Black's Law Dictionary 450 (6th ed. 1990) (emphasis added). The trial court, not the obligor, must determine that it is in Jennifer's best interests to waive income withholding. Sven must show good cause to do so through evidence and testimony.

■ Here, Sven sought to establish good cause. In his response to the motion to amend, Sven asserted good cause under the statute because "I have never been delinquent in child support payments in the past 12 years...." *See Collins v. Collins* 495 N.W.2d 293, 297 (N.D.1993) (child support obligor "badly in arrears" could not show "good cause" to avoid withholding); *Bloom v. Fyllesvold,* 420 N.W.2d 327 (N.D.1988). This hearing was recessed before Sven could complete his evidence on this point. Sven also claims that withholding a uniform amount every month, with his two-week pay cycle and three pay-periods in several months, poses difficult computer-program problems for his employer. Indeed, after this appeal began, the trial court stayed income withholding at Sven's request, saying that, "[i]n light of his previous payment record, this Court does not feel it inappropriate to favorably consider his request," but cautioning that "should [Sven] become delinquent in his child support payments, mandatory wage withholding will be immediately placed in effect." Given Sven's meticulous payment history, his employer's computer problems, and the minimal risk of arrears to Jennifer, it may be in the child's best interests and a good cause to avoid immediate income withholding, subject to the same condition.

■ The trial court did not address good cause and may have overlooked it. When good cause is fairly raised and presented, as in this case, the order imposing income withholding should express that good cause was not demonstrated.

Of course, there may be alternative solutions for the payroll difficulties of Sven's employer, by ratably withholding $231 from each of 26 paychecks in a year, by withholding $500 from the first paycheck each month, or by Sven's direct payment without income withholding. If the Unit and Sven cannot agree, the trial court should select the best alternative on reconsideration after remand.

2. If a party to a proceeding, who would otherwise be subject to immediate income withholding under subsection 1, demonstrates, and the court finds that there is good cause not to require immediate withholding, or if the parties, including any assignee of support rights, reach a written agreement that provides for an alternative arrangement for assuring the regular payment of child support, the court need not subject the income of the obligor to immediate withholding.

3. A finding that there is good cause not to require immediate income withholding must be based on at least:

a. A written determination that, and an explanation of why, implementing immediate income withholding would not be in the best interests of the child;

b. Proof of timely payment of previously ordered support; and

c. Requirement that the obligor keep the clerk informed of the name and address of each of the obligor's current and future income payors and of any employment-related health insurance to which the obligor has access.

4. A written agreement for an alternative arrangement for assuring the regular payment of child support is effective only if the agreement at least, in addition to other conditions the parties agree to:

a. Provides that the obligor shall keep the clerk informed of the name and address of each of the obligor's current and future income payors and of any employment-related health insurance to which the obligor has access.

b. Describes the provisions by which regular payment of child support is assured; and

c. Is reviewed and approved by the court and entered into the court's records.

### D.

█ A local judicial mandate to the Grand Forks County clerk of court requires that "all child support payments" be made by "certified check, money order, or cash, or other guaranteed instrument." Although this direction was not included in the trial court's ordered modifications here, the requirement of payment by a guaranteed instrument was put in the decree prepared by the Unit and entered by the clerk of court. Sven objects to it as unreasonable.

However, NDCC 14–09–08.1(1) directs that all child support payments be paid to the clerk of the district court. NDROC 8.2(e) directs that domestic support payments "must be in a manner acceptable to the clerk unless otherwise ordered by the court." *See* NDCC 14–09–09.23.[5] The North Dakota Clerk of Court Manual, at Section 12.3(A)(1), (B)(1), and 12.4(B) (Rev. 06–91), says: "Where possible, it is recommended that these payments be by money order or some other form of guaranteed check."

Here, Sven claims that he has continuously and timely paid Jennifer's support. If an obligor has a long and unblemished payment history, the court has power under NDROC 8.2(e) to otherwise order the clerk to accept payment by personal check, rather than a guaranteed instrument, unless and until the obligor's personal check is returned unpaid. Because the trial court's order for judgment did not specifically direct a guaranteed form of payment and the trial court may not have recognized its power to allow payment by personal check in worthy cases, this change should be further considered on remand.

### IV.

We affirm the trial court's increase in Sven's child support obligation to $500 per month. We affirm the trial court's refusal to hear evidence of child abuse in this support case. We remand for reconsideration of the related changes in the support decree in the light of this opinion.

SANDSTROM and NEUMANN, JJ., concur.

VANDE WALLE, J., concurs in the result.

LEVINE, Justice, concurring in part and dissenting in part.

I disagree with the majority's treatment of income withholding and its direction to the trial court to reconsider whether good cause exists here not to require immediate income withholding. I also disagree that remand is required on the issue of payment of child support by guaranteed instrument. I therefore dissent from those portions of the opinion but concur in the rest.

Section 14–09–09.24, NDCC, creates a strong preference for income withholding. The statute requires income to be withheld even if all prior child support payments were timely. Although it allows an obligor to establish a good-cause exception to income withholding, it makes proof of the exception extremely difficult. The obligor must persuade the trial court that (1) it is in the best interests of the child (not the obligor) not to withhold income and (2) past payments have been timely. These are the two minimum requirements for showing good cause. Should the trial court find good cause, the statute also requires the trial court to explain why income withholding is not in the child's best interests. I cannot readily think of a circumstance where it would be in the child's best interest to forgive income withholding.

The majority underestimates the stringency of the statutory scheme. First, despite its recitation of the statute's income-withholding mandate "regardless of whether the obligor's support payments are delinquent," the majority suggests that income withholding is not proper when payments have been timely. Next, the majority says the court must explain why good cause does *not* exist. But the statute directs the opposite. The statute requires "an explanation of why[ ] imple-

---

5. NDCC 14–09–09.23 says:

   *Administration of income withholding.* The supreme court shall develop procedures for the accurate documentation and monitoring of support payments made through income with-holding under this chapter. Procedures must be developed for the clerks of court to promptly distribute amounts withheld pursuant to an income withholding order and to promptly refund erroneously withheld amounts.

menting income withholding would not be in the best interests of the child." In other words, the court must explain *why* there *is* good cause, and not, as the majority directs, why there is not good cause.

Finally, and most telling, the majority states, "Given Sven's meticulous payment history, his employer's computer problems, and the minimal risk of arrears to Jennifer, it may be in the child's best interests and a good cause to avoid immediate income withholding...." *Ante* at 548. The so-called problems with the employer's computer are not the stuff of good cause and the majority acknowledges as much. What the majority does is meld into one the two separate requirements for good cause: that income withholding is not in the child's best interests and that the obligor's previous support payments were timely. The legislature very clearly expressed its intent that timely payments alone do not constitute good cause. Yet, the majority distorts the clear legislative intent by equating timely payments with the child's best interests. It suggests that "the minimal risk of arrears to Jennifer" because of Mickels' "meticulous payment history" makes income withholding not in the child's best interests. In effect, the majority disregards the requirements of section 14-09-09.24 and instead encourages the trial court to find good cause here based only on Sven's record of timely payments. I would affirm the trial court's withholding order. The legislature has created an onerous burden to find good cause not to withhold an obligor's income. It is not this court's function to reduce that burden.

I believe the majority also wrongly remands on the issue of the proper form of child support payments. A trial court need not expressly decline to exercise "its power to allow payment by personal check in worthy cases." *Ante* at 549. I would not second-guess the trial court's recognition of its power and would assume that because it did not exercise its power under NDROC 8.2(e), it chose not to exercise it. This court should not remand every time a trial court does not exercise a discretionary power on the ground that it "may not have recognized its power." *Ante* at 549. I do not find the trial court's

order of payment ambiguous, given the local judicial mandate of payment by guaranteed instrument. Because I would not remand for reconsideration of income withholding or the form of payment, I respectfully dissent. I join in the rest of the decision.