Cynthia Jo BEALS, Plaintiff and Appellee,

v.

John K. BEALS, Defendant and Appellant.

Civ. No. 930280.

Supreme Court of North Dakota.

June 15, 1994.

---

one day before oral argument, contrary to the requirements of NDRAppP 31(a). Accordingly, we do not consider it.

Patti J. Jensen of Lindquist & Jeffrey, East Grand Forks, MN, for plaintiff and appellee.

Michael E. Keller of The Bergquist Law Firm, Larimore, for defendant and appellant. Appearance by Harold J. Bergquist.

VANDE WALLE, Chief Justice.

On appeal from a district court judgment granting his petition for divorce, John K. Beals (Ken) challenges portions of the district court judgment relating to child support, spousal support, income withholding, and division of his unvested military retirement pay. We direct modification of the judgment relating to the division of Ken's unvested retirement pay and affirm except as modified.

Ken and Cynthia Jo Beals (Cindy) were married in August 1977. At the time, Ken was a full-time college student. After graduating from college in June 1980, Ken commenced active-duty service in the United States Air Force. In 1986, Ken earned a master's degree from the Air Force Institute of Technology. At present he is a major in the Air Force.

Three children were born to the marriage: Jessica, born in 1982; Melinda, born in 1986; and Katelyn, born in 1992. Cindy worked as a receptionist and secretary until Jessica was born in 1982; since that time, Cindy has not worked outside the home.

In October 1991, Cindy began to suspect that Ken was involved with another woman, a sergeant in the Air Force. Cindy approached an Air Force captain regarding the matter. Air Force personnel conducted interviews regarding Ken's relationship with the sergeant and determined that the relationship, while essentially platonic, was unprofessional. Ken was ordered to end the relationship. Meanwhile, Cindy began an action for legal separation. Ken answered Cindy's complaint by petitioning for divorce.

The district court granted Ken's petition for divorce and awarded custody of the children to Cindy. The court ordered that Ken be allowed visitation during the summer months and on alternating holidays and weekends. The court determined that "the appropriate level of support is $1,200.00 per month for the support of the parties' three minor children. This is based on an approximate net income for child support purposes of $3,513.78." Also, "such amount shall be military allotment and be subject to wage withholding as required by statute." The court further ordered Ken to pay rehabilitative spousal support to Cindy in the amount of $800 per month, for a period of six years. Finally, as part of the property division, the court awarded Cindy a share of Ken's unvested military retirement pay.

## I. SPOUSAL SUPPORT

Ken asserts that the $800–per–month spousal support award, when coupled with his other expenses, exceeds both his own ability to pay and the needs of Cindy. Also, Ken argues, the district court's determination that the support obligation should continue for six years was arrived at arbitrarily. Ken emphasizes that the record contains no firm evidence regarding the length of time it would take Cindy to attain her desired educational goals. Ken contends that, because the six-year duration was reached without factual support in the record, the award was clearly erroneous. *See Smith v. Smith,* 326 N.W.2d 697 (N.D.1982). We reject Ken's arguments with regard to both amount and duration.

When a divorce is granted, section 14–05–24, NDCC, authorizes the court to "compel either of the parties ... to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively." Determinations relative to spousal

support awards are findings of fact which will not be disturbed on appeal unless clearly erroneous. *LaVoi v. LaVoi,* 505 N.W.2d 384 (N.D.1993); NDRCivP 52(a). Factors relevant to the amount and duration of support may include:

> "the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, ... and such other matters as may be material." *Weir v. Weir,* 374 N.W.2d 858, 862 (N.D.1985).

This court has looked favorably upon awards of "rehabilitative" spousal support, as the district court awarded here; rehabilitative awards are typically limited in duration and are designed to afford disadvantaged spouses the opportunity to gain the education, training, and experience necessary to become self-sufficient. *E.g., Heley v. Heley,* 506 N.W.2d 715 (N.D.1993); *Wahlberg v. Wahlberg,* 479 N.W.2d 143 (N.D.1992); *Roen v. Roen,* 438 N.W.2d 170 (N.D.1989). We have noted that "[t]here are no rigid rules for determining whether or not to award alimony and the amount of such an award. The determination of a just award is within the discretion of the trial court and will depend upon the facts and circumstances of each case." *Briese v. Briese,* 325 N.W.2d 245, 249 (N.D.1982); NDCC § 14–05–24.

■ The district court did not specify precisely why $800 per month for six years is an appropriate amount and duration for spousal support. However, the court did enumerate the following facts and circumstances relevant to the determination: Ken has earned both a Bachelors Degree and a Masters Degree during the course of the marriage; Ken has recently been promoted to Major in the Air Force; Ken's net income is $3513.78 per month, or over $42,000 per year; Cindy quit working outside the home in 1982, when the couple's first child was born; Cindy has remained at home to raise the children since that time; Cindy does not have a college degree but desires to attend college and, at present, aspires to become a real estate ap-praiser; Cindy has been diagnosed as suffering from "undifferentiated connective tissue disease", which "will probably limit her ability to attend classes and to obtain employment".

Ken argues that under *Smith v. Smith, supra,* the evidence must more definitively establish the appropriate amount and duration of the award. In *Smith,* we set aside the trial court's rehabilitative support order because the facts did not support the duration of the award. There, the trial court ordered spousal support for 30 months, purportedly long enough to permit the disadvantaged spouse to earn her college degree. We concluded that the 30–month award was clearly erroneous because there was no evidence in the record to support the trial court's implicit conclusion that the disadvantaged spouse, while raising four children, could earn her four-year college degree in a mere 30 months.

*Smith* is distinguishable from the case at hand. Here, the court reasonably inferred that six years of assistance is appropriate, due in part to the likelihood that Cindy's education and career will be hampered by her failing health and by the burden of being custodial parent to three young children.

■ Despite Ken's assertions, we are not convinced that the district court ignored Ken's projected needs and expenses. Although the court did not view the evidence in the manner Ken would have preferred, we will not reverse the district court merely because we might have viewed the evidence differently. *Ludwig v. Burchill,* 481 N.W.2d 464 (N.D.1992). We have reviewed the record, including the financial reports of the parties, and do not find the amount or duration of spousal support to be clearly erroneous. Should circumstances change, Ken may move to have the judgment modified; at present, there is a factual basis in the record for the award.

## II. CHILD SUPPORT

■ Next, Ken challenges the district court's refusal to abate his child support obligation for the summer months, when he is allowed visitation of the children. The

child support guidelines, NDAC § 75–02–04.1–10, establish the presumptively correct amount of monthly child support. NDCC § 14–09–09.7(3); *E.g., Bernhardt v. K.R.S.,* 503 N.W.2d 233 (N.D.1993). However, the guidelines do not take into account whether an obligor's ability to provide support will be lessened by "travel expenses incurred solely for the purpose of visiting" the children. NDAC § 75–02–04.1–09(2)(h). When a support obligation, coupled with factors not taken into account by the guidelines, causes an undue hardship, the court may deviate from the guidelines. NDCC § 14–09–09.7(3); *Bernhardt, supra.*

Deviation from the guidelines requires the court to make a written finding or a specific finding on the record that undue hardship will result. NDCC § 14–09–09.7(3). Here, the district court made no written or specific finding of hardship. Upon review of the record, we determine that the court's refusal to deviate from the guidelines is not clearly erroneous.

■ Ken also argues that the trial court abused its discretion by ordering income withholding to secure child support payments. *See* NDCC § 14–09–09.24. The military allocates a portion of Ken's paycheck to his child support obligation, even in the absence of an income withholding order. Ken asserts that, because payment is secured through the military allotment system, the parties agreed to avoid a withholding order.

■ Under section 14–09–09.24, NDCC, an obligor may avoid automatic withholding only upon a showing of "good cause" or upon "written agreement that provides for an alternative arrangement for assuring the regular payment of child support...." NDCC § 14–09–09.24(2). We do not liberally construe the exceptions to the income withholding requirements of section 14–09–09.24. Rather, a "strong public policy and the tenor of the federal and state schemes for mandatory and immediate income withholding for each child support order" require that the exceptions be found "cautiously". *Shipley v. Shipley,* 509 N.W.2d 49, 55 (N.D.1993); *see also, Hallock v. Mickels,* 507 N.W.2d 541, 549 (N.D.1993) [Levine, J., concurring in part and dissenting in part].

Here, it is at best questionable that Cindy agreed to waive her children's right to automatic withholding. Ken admits that the parties did not execute a formal written agreement regarding income withholding, but argues that Cindy testified at the hearing that she did not want court-ordered withholding:

"Q [by Karen Wills, Cindy's attorney:] Is the interim child support paid pursuant to a wage withholding order?

A [by Cindy:] I believe so.

Q Would you prefer that child support and spousal support be paid through allotment?

A Yes, I would."

Based on the cold transcript before us, we believe Cindy's testimony is subject to varying interpretations. In any event, before a waiver of the statutory right to income withholding will be recognized, the agreement is required to be in writing. We affirm the district court.

## III. FUTURE RETIREMENT PAY

■ As part of the property settlement, the district court ordered that Cindy be awarded a portion of Ken's future military retirement pay. The court ordered that Cindy's share be computed using a formula similar to the formula used in *Bullock v. Bullock,* 354 N.W.2d 904 (N.D.1984), with Cindy's award equaling one-half Ken's total retirement pay, multiplied by the number of years of marriage during which Ken was on active duty, divided by the total number of years of active duty service. However, the district court used the date that the couple married, August 6, 1977, instead of the date that Ken commenced active duty, June 27, 1980, for determining the number of years of marriage that Ken was active duty. The parties agree that the court erred in this regard; we order that the judgment be modified in accordance with the parties' stipulation that the period of time during which Ken was both married to Cindy and on active duty began June 27, 1980, and not August 6, 1977.

■ Also, Ken argues that the district court erred in applying the *Bullock* formula because, Ken asserts, the number of years of

marriage while on active duty should not include the last year of the marriage. During that time, Ken contends, Cindy's "agenda" was to ruin Ken's military career with unfounded accusations of marital infidelity involving an enlisted person. During the last year of marriage, Ken argues, Cindy did not further Ken's career but, rather, jeopardized it.

We disagree. Although the evidence that Ken had engaged in misconduct with an enlisted person was not conclusive, the evidence indicates that Cindy's suspicions of Ken were not "unfounded". Cindy reported her suspicions to military personnel, but the inference can be drawn that she did so in order to save the marriage, rather than to ruin her husband's career. For purposes of computing Cindy's share of Ken's retirement pay, the district court's determination that the marriage ended on the date of the divorce hearing, rather than on an earlier date, is not clearly erroneous.

Judgment affirmed except as remanded for modification in accordance with this opinion.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

In order to fairly consider the matter of spousal maintenance, a trial court must understand, as a general proposition, the economic realities of the marketplace as they affect those women who have foregone training in favor of homemaking or have absented themselves from the workplace and foregone career advancement in favor of homemaking, or have worked at low-paying jobs to supplement the primary breadwinner's income.

Generally, the economic consequences of divorce for women are devastating. A wife's post-divorce income is about half that of her former husband. Colorado Supreme Court Task Force on Gender Bias in the Courts, Colorado Office of the State Court Adm'r, Gender and Justice in the Colorado Courts 14 (1990). Because, as a rule, women have lower earning capacities, their net worth declines by 25% within four years of divorce, while their former husbands' improve. Florida Supreme Court, Report of the Florida Supreme Court Gender Bias Commission 4, 47 et seq. (1990); Rhode Island Committee on Women in the Courts, Rhode Island Supreme Court, A Report on Gender Bias 39 et seq. (1987). Within eight years after divorce a woman will often have a negative net worth. Fairness and Equality Committee, Idaho Supreme Court, Digest of State Reports on Gender Bias 9 (1991).

While I agree that the trial court's award of six years' maintenance is not clearly erroneous, I write specially to suggest that in a marriage of long duration like the one at bar, rehabilitative support for a term of years may not accomplish the rehabilitation intended. Not all disadvantaged spouses are able to or fit to seek college degrees or specialized training. Even if they are, the marketplace is often not a hospitable place and their lack of that experience that is customarily commensurate with age, will likely result in low wages if, in fact, they succeed in being hired. Therefore, should circumstances change so that Cindy's college career does not achieve either the degree or job or income anticipated, she may move to have the judgment modified to provide permanent support to equalize the parties' reduced standard of living, *see Weir v. Weir,* 374 N.W.2d 858 (N.D. 1985), or to provide the same standard of living if Ken's income is sufficient. *See Bagan v. Bagan,* 382 N.W.2d 645 (N.D.1986). The point is that Cindy will have been absent from the workplace for close to two decades by the time she graduates from college and there should be no false assumption about the ease with which she can gain employment at a decent wage. The rehabilitative support will achieve its goal only if it enables Cindy to overcome her lack of training, foregone education and absence from the job market by obtaining a degree, finding a job, and earning a decent wage. If she fails to achieve any of these goals, after making reasonable effort, she should be entitled to permanent support.